**REID COLLINS & TSAI LLP**
Marc S T Dworsky (State Bar No. 157413)
920 Camino Viejo
Montecito, CA 93108
(626) 429-4022
mdworsky@reidcollins.com

**REID COLLINS & TSAI LLP**
Minyao Wang*
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
mwang@reidcollins.com
yjaffe@reidcollins.com

**REID COLLINS & TSAI LLP**
Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

*Additional Counsel*

*\*Pro hac vice* applications forthcoming

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Application of<br><br>507 SUMMIT LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use In a Foreign Proceeding. | Case No. 23-mc-80069<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.    The Company and the Merger ............................................................................. 3

    B.    The Appraisal Proceeding ................................................................................... 7

ARGUMENT .............................................................................................................................. 8

I.    The Application Satisfies the Statutory Requirements of Section 1782 ................. 8

    A.    Mr. Chao "Resides" or Is "Found" in This District ........................................... 8

    B.    Petitioner Seeks Discovery "For Use" in a Foreign Proceeding ........................ 9

    C.    Petitioner is an "Interested Person" ................................................................. 10

II.    The Discretionary *Intel* Factors Weigh in Favor of Granting the Application ..... 10

    A.    *Intel* Factor I: Respondent Is a Nonparticipants in the Appraisal Proceeding ........... 10

    B.    *Intel* Factor II: The Cayman Court Is Receptive to U.S. Judicial Assistance ............ 11

    C.    *Intel* Factor III: The Application Is Not an Attempt to Circumvent Cayman Law .......................................................................................................... 13

    D.    *Intel* Factor IV: The Discovery Sought Is Not Unduly Burdensome ............... 14

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*De Leon v. Clorox Company*,
  No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) ............................... 13, 16

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
  No. 1:21-mc-1019-CAS (JPR) (C.D. Cal.).................................................................................. 12, 15

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
  No. 19-mc-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020)......................................... 15

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  No. 19-MC-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ...................... 14, 15

*In re Appl. of Jt. Stock Co. Raiffeinsenbank*,
  No. 16-mc-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016)............................... 8, 13, 16

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*,
  No. 4:21-mc-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021)...................................... 9

*In re Application of Akebia Therapeutics, Inc. for an Order Granting Leave to Issue Subpoena for the Taking of Discovery Pursuant to 28 U.S.C. 1782.*
  No. CV 14 80294 MISC, 2014 WL 12845006 (N.D. Cal. Oct. 21, 2014) ................................... 10

*In re Credit Suisse Virtuoso*,
  No. 21-mc-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1, 2022)......................................... 14

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) .......................................................................................................... 8

*In re Hattori*,
  No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ....................................... 13

*In re Hopkins*,
  No. 20-mc-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020) ........................................ 12

*In re Kingstown Partners Master Ltd.*,
  No. 21-MC-691-LTS, 2022 WL 1081333 (S.D.N.Y. Apr. 8, 2022) ........................................ 9, 14

*In re Liverpool Ltd. P'ship*,
  No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021) ............................................. 14

*In re Mireskandari*,
  No. 12-cv-2865-IEG (DHB), 2012 WL 12877390 (S.D. Cal. Dec. 20, 2012) ....................... 13, 15

*In re MoneyOnMobile, Inc.*
  *No.19-mc-80128-VKD*, 2019 WL 2515612 (N.D. Cal. June 18, 2019).......................................... 8

*In re Penner*,
  No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017)............................................ 12

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
  No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019)............................................. 13

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  583 B.R. 803 (Bankr. S.D.N.Y. 2018)......................................................................................... 12

*In re Republic of Ecuador*,
  No. 2:11–mc–00052 GSA, 2011 WL 4089189 (E.D. Cal. Sept. 13, 2011)................................... 8

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR
AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

*In re Republic of Ecuador*,
   No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) .................. 11

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977) ........................................................................................................ 9

*In re Wallis*,
   No. 18-mc-80147-DMR, 2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) ..................................... 11

*In the Matter of Nord Anglia Education, Inc.*
   (Unreported, 17 March 2020) ..................................................................................................... 12

*In the Matter of Trina Solar Limited*
   (Unreported, Grand Court, Segal J, 23 September 2020) ........................................................... 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) .............................................................................................................*passim*

*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*
   [2009] CILR 553 ......................................................................................................................... 11

*Qihoo 360 Technology Co. Ltd.*
   2017 (2) CILR 585 ................................................................................................................. 2, 12

*Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*,
   No. 18-mc-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018) ......................................... 9

*Re Qunar Cayman Islands Limited*
   (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) ....................................................... 11

*Shanda Games Limited*
   [2018 (1) CILR 352] ................................................................................................................... 12

**Statutes**

28 U.S.C. § 1782 ................................................................................................................*passim*


**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 14

Fed. R. Civ. P. 45(d)(1) .................................................................................................................. 15

507 Summit LLC ("507 Summit" or "Petitioner")[1] hereby respectfully submits this application (the "Application"), pursuant to 28 U.S.C. § 1782 ("Section 1782"), seeking a Court order that authorizes Petitioner to serve the proposed subpoena, attached to the Declaration of Minyao Wang (the "Wang Decl.") as Exhibit A (the "Subpoena"), on David Katsujin Chao ("Mr. Chao" or "Respondent") and grants any and all other relief to Petitioner as the Court deems just and proper. The proposed Subpoena requests both the production of documents and deposition testimony from Mr. Chao, for use in an appraisal proceeding (the "Appraisal Proceeding") pending in the Cayman Islands in which the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") will determine the fair value of Petitioner's shares in 51job, Inc. ("51job" or the "Company"). 51job is a Chinese company, incorporated in the Cayman Islands and listed on the NASDAQ exchange in the United States, that was recently taken private in a $4.3 billion merger transaction (the "Merger") orchestrated by insiders for a share price that Petitioner contends was woefully inadequate. Petitioner has dissented under Cayman law with respect to the Merger and is pursuing the Appraisal Proceedings to recover the full value of its 51job shares.

This Application is supported by the Declaration of Samuel Martin Pierce Dawson (the "Dawson Decl."), an attorney admitted to practice law in the Cayman Islands, and the Declaration of Minyao Wang, a New York attorney.

**PRELIMINARY STATEMENT**

Petitioner respectfully submits this Application pursuant to Section 1782 to obtain targeted and important discovery for use in the Appraisal Proceeding. Mr. Chao played a key role in the Merger. He served as the Chairman of the Company's board of directors throughout the negotiation and approval processes for the Merger. He signed (i) a Proxy Statement filed by the Company with the Securities and Exchange Commission ("SEC") in connection with the Merger, and (ii) a notice of the extraordinary general meeting of shareholders held to approve the Merger. The evidence that Petitioner seeks from Mr. Chao is directly relevant to the central issues in the Appraisal Proceeding: the negotiation, re-negotiation, and ultimate approval of the Merger for a price significantly lower

---

[1] Petitioner 507 Summit is a member of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding.

than the original offer, and the fair value of Petitioner's (and the other dissenting shareholders') 51job shares. The Cayman Court cannot order discovery from Mr. Chao because it does not have personal jurisdiction over him. However, the Cayman Court welcomes litigants to use evidence obtained through U.S. courts by means of Section 1782. Accordingly, Petitioner submits this Application to obtain discovery from Mr. Chao, who is subject to the jurisdiction of this Court, to assist the Cayman Court in determining the fair value of Petitioner's 51job shares.

The Application satisfies the statutory requirements of Section 1782: (i) Mr. Chao "resides" or is "found" in this District because Mr. Chao resides in, maintains an office in, and otherwise has sufficient contacts with this District; (ii) the requested discovery is "for use" in a foreign proceeding; and (iii) Petitioner is an "interested person." 28 U.S.C. § 1782(a) (2018). Furthermore, each of the four discretionary factors, identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, that a district court may consider in deciding whether to grant discovery under Section 1782, weigh decisively in favor of granting the Application. 542 U.S. 241, 244-245 (2004).

*First*, Petitioner cannot use the Cayman legal process to compel discovery from Mr. Chao because he is neither a party to the Appraisal Proceeding, nor is he subject to the jurisdiction of the Cayman Court.

*Second*, the Cayman Court is receptive to assistance afforded by U.S. federal courts through Section 1782. As Mr. Dawson has explained in his declaration, the Cayman Court has emphasized that judges in appraisal proceeding need access to all available information concerning valuation to determine the fair value of the shares, including evidence from outside the Cayman Islands. *See* Dawson Dec. ¶ 15 (discussing *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585). For instance, in recent appraisal cases, pursuant to Section 238 of the Cayman Islands Companies Act (as revised) ("Section 238"), Cayman courts have considered, *inter alia*, documents that may be relevant to the valuation of the shares at issue and evidence as to whether the deal process itself was open, competitive, and fair. *See also In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J, 23 September 2020) (considering conduct-related factors when determining fair value); Dawson Decl. ¶¶ 14-20.

*Third*, the Application is not an attempt to circumvent any restrictions imposed by Cayman law on proof gathering.  Rather, the scope of discovery is broad under Cayman law and Cayman courts welcome the introduction of foreign evidence obtained through Section 1782.  There is no prohibition against obtaining the evidence sought herein under Cayman law generally or in any of the orders entered to date by the Cayman Court in this appraisal proceeding. Moreover, the requested discovery does not implicate any privilege or protection that would make its admission improper under Cayman law.

*Fourth*, the discovery Petitioner is seeking herein is not unduly intrusive or burdensome. Mr. Chao, as the chairman of the Company when the Merger was considered, approved and implemented, clearly has information in his possession, custody, or control that is directly relevant to the central issues in the Appraisal Proceeding. The Application requests discovery that is tailored to obtain information directly relevant to the critical issues in the Appraisal Proceeding, such as the fair value of Petitioner's 51job shares, and the processes by which the Company and the Special Committee negotiated, recommended, and approved the Merger and why the Company permitted the purchasers to renege on an earlier offer which, while still did not provide fair value to dissenting shareholders, was superior to the Merger proposal that was ultimately consummated.

The Application satisfies the statutory requirements of Section 1782, the *Intel* factors, and is fully consistent with the policies behind Section 1782.  Accordingly, the Application should be granted.

## FACTUAL BACKGROUND

### A.   The Company and the Merger

Based in Shanghai and founded in 1998, 51job is a leading provider of human resources services in China.  The Company's online recruitment platforms are well-known throughout the global Chinese-speaking world.  Prior to the Merger, 51job's shares were listed (through American Depository Receipts) on the NASDAQ exchange under the symbol "JOBS."

In September 2020, during the height of the COVID-19 pandemic, DCP Capital Partners II , L.P., (collectively with its affiliates, "DCP"), an Asian private equity firm, made an offer to take the Company private for $79.05 per share.  Wang Decl. Ex. B at 77-78.  In response, the Company

formed a Special Committee, consisting of two purportedly independent directors, Li-Lan Cheng and Eric He, to evaluate and consider the proposal. *Id.* at 79. Following its formation, the Special Committee retained legal counsel and Duff & Phelps as its financial advisor. *Id.* at 79-80. On May 1, 2021, counsel for DCP requested the Special Committee's consent to form a buyer consortium (the "Buyer Group") that included DCP, Ocean Link Partners ("Ocean Link") and Mr. Rick Yan, the Company's director, CEO and president. *Id.* at 87. On May 4, 2021, the Special Committee granted consent to form the Buyer Group. *Id.* On the same day, DCP updated its offer to reflect the additional buyers. *Id.* However, the Merger consideration for the updated offer remained at $79.05 per share. *Id.* Recruit Holdings Co., Ltd. ("Recruit"), a Japanese online recruitment company that held a 35% stake in the Company, later signed an agreement with the Buyer Group and the Company to support the Merger, in return for the ability to convert a substantial portion of its then current holding of 51job common stock into the ability to participate in the upside of the new entity formed by the Merger.[2]

51job and the Buyer Group, with the legally binding support from Recruit, signed a Merger agreement on June 21, 2021, to take the Company private for the original offer price of $79.05 per share. *See id.* at 95. Duff & Phelps provided a fairness opinion in support of the Merger. *Id.* at 131. The fairness opinion "estimated the value of each ADS [of the Company] to range from US$73.18 to US$86.94." *Id.*

Petitioner contends that this proposed price of $79.05 per share severely undervalued the Company and was opportunistically timed to take advantage of the temporary economic dislocation caused by COVID-19 to deprive minority shareholders of the fair value of their ownership stakes in the Company.[3] The Merger proposal contained glaring procedural deficiencies. For example, the Merger agreement did not require approval by a majority of the minority shareholders ("MoM Protection"), a common corporate law device used to protect minority shareholders from controlling shareholders. *See id.* at 91 and 92 ("Upon further discussions, the Special Committee decided to

---

[2] https://recruit-holdings.com/en/newsroom/20210622_01/
[3] On January 15, 2020, just before Covid-19 became endemic in China and paralyzed much of its economy, the Company's share price traded as high as $91.75.

forgo the 'majority of the minority vote' voting requirement"). Under Cayman law, the Merger would need to be approved by two thirds of the shares present at a special meeting called to consider the proposal. The Buyer Group, together with Recruit's support, controlled 56.1% of the vote. *Id.* at 7. This means the Buyer Group, if allowed to vote, would need to garner only a small percentage of the unaffiliated shareholders to ensure passage of the Merger. Thus, the Special Committee should have insisted that the Buyer Group abstain from voting to approve the Merger. Because the Special Committee failed to do so, shareholder approval of the Merger was almost a foregone conclusion. And while the Merger agreement purported to require a 30-day post-shop period, the Buyer Group, which comprised the majority of the voting shares, had agreed contractually not to vote for any alternative transaction. This assured no market interest for an alternative proposal. *Id.* at 142-43.

On July 6, 2021, the Company filed a Schedule 13E-3 form and draft proxy statement, which incorporated Duff & Phelps's fairness opinion, with the SEC in connection with the original Merger proposal. *See* Wang Decl. Ex. D. The draft proxy statement and the draft notice of shareholders meeting were to be signed by Mr. Chao. Wang Decl. Ex. B at 13 and 23. The draft proxy statement projected a Merger closing date in the second half of 2021. *Id*. at 62-63. However, the Company, subsequent to the filing of the Schedule 13E-3 form, ceased communications with its shareholders regarding the Merger proposal. This unusual and unexplained radio silence caused the Company's share price to drop to as low as $60 per share.

On November 8, 2021, approximately four months after the filing of the original Schedule 13E-3 statement, the Company finally issued a press release vaguely disclosing that certain members of the Buyer Group had been in consultation with Chinese regulators on the "recent regulatory changes" in China that might be applicable to the Merger proposal. *See* Wang Decl. Ex. R. The press release did not explain what "regulatory changes" it was alluding to. By then, the Company's shares closed as low as $43 per share, due in large part to the lack of transparency concerning the status of the Merger. Neither the Company nor the Buyer Group has ever offered an adequate explanation regarding this purported consultation with Chinese authorities.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR
AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

On January 12, 2022, the Buyer Group revised its offer to take the Company private by reducing Merger consideration to $57.25 per share. Wang Decl. Ex. C at 51. This new offer represented a drastic 28% reduction from the original offer price of $79.05. Then, on March 1, 2022, the Company announced it had agreed to a revised Merger price of $61 per share, which was a 23% decrease from the original Merger price (and 34% lower from the Company's pre-pandemic trading price of $91.75) and reflected only a modest increase from the Buyer Group's "lowball" offer from January 2022. *Id.* at 54-55. Duff & Phelps provided an updated fairness opinion for the revised Merger deal. *Id.* at 75-78. Despite the fact that the Merger price fell significantly outside the range of fair value ($73.18 to $86.94) provided in Duff and Phelps's original fairness opinion from only six months earlier, Duff & Phelps's updated fairness opinion concluded that the revised deal terms were fair. *Id.* at 267. The Company never explained the purported legal basis under which the Buyer Group reneged on the earlier proposal and why the Company took no legal action against the Buyer Group for breaching that legally binding agreement.

The revised Merger agreement again contained no MoM Protection. *Id.* at 49. Based on the revised proxy statement, it appears that this issue was not seriously revisited by the Special Committee even though the deal terms were now even less favorable to the public shareholders. And while the Merger agreement was subject to a (materially shortened) 15-day go-shop period that began on March 1, 2022, again no interested bidders emerged as a result of the Buyer Group's publicly announced refusal to consider an alternative transaction. *See id.* at 53-55.

On March 29, 2022, the Company filed a revised proxy statement with the SEC that contained the Special Committee's recommendation that shareholders approve the revised Merger offer. Wang Decl. Ex. E. This proxy statement was signed by Mr. Chao. Wang Decl. Ex. C at 7 and 12. This Proxy Statement recommended that shareholders vote in favor of the Merger. *Id*. at 4. Mr. Chao also signed the notice of shareholders meeting that was sent out to all shareholders of the Company.

An extraordinary general meeting of the Company's shareholders was held on April 27, 2022. Given that the Buyer Group controlled a majority of the voting shares, the Merger was predictably approved by the Company's shareholders. Wang Decl. Ex. S. The Merger was officially

6

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR
AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

consummated on May 6, 2022, and the Company was delisted from the NASDAQ exchange. Wang Decl. Ex. T.

Mr. Chao served as Chairman of the Company's board of directors throughout the Merger's negotiation and approval. Wang Decl. Ex. C at 271.

### B. The Appraisal Proceeding.

On July 15, 2022, the Appraisal Proceeding was commenced in the Cayman Islands under Section 238. Dawson Decl. Ex. 4. Petitioner (along with the other dissenting shareholders) and the Company will each retain a valuation expert to assist the Cayman Court in arriving at a fair valuation of 51job shares. Dawson Decl. ¶¶ 8, 11.

Under Cayman law, when determining fair value, the court may examine both intrinsic valuation issues related to 51job and, as it relates to the fairness of the deal price, the procedural fairness and robustness of the Merger process from which it resulted. *Id.* ¶¶ 14-20. Petitioner and the other dissenting shareholders will have the opportunity to present, *inter alia*, documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Cayman Court. While Cayman courts do not have the power to compel discovery from third parties, such as Mr. Chao, that are not subject to Cayman jurisdiction, Cayman law permits litigants to obtain discovery from third parties located outside the Cayman Islands. *Id.* ¶¶ 28-30.

Accordingly, Petitioner seeks leave of this Court to serve a subpoena on Mr. Chao for documents, information, and deposition testimony related to the Merger for use in the Appraisal Proceeding. Given Mr. Chao's role as Chairman of the Board of 51job, including during the time when the Merger was negotiated and implemented, Petitioner seeks discovery and testimony from him on issues relevant to the Appraisal Proceeding, including, without limitation: (i) the fairness of the original Merger price and the revised Merger price, (ii) the rationale for failing to force the Buyer Group to comply with the original Merger agreement, renegotiating with the Buyer Group and accepting the revised lower Merger price, (iii) the process leading to the approval of initial and final prices for the Merger; (iv) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by the Company or the Special Committee, or provided to shareholders; and (v) alternative bids to acquire the Company, if any.

# ARGUMENT

## I. THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 authorizes a U.S. court to order any person that resides in or is found in its judicial district to give testimony or produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding. 28 U.S.C. § 1782(a). *see also Intel*, 542 U.S. at 249. The Application satisfies all three elements.

### A. Mr. Chao "Reside" or Is "Found" in This District

With respect to natural persons, courts in this Circuit have determined that Section 1782's requirement that a respondent "reside[s] or is found" in a district is satisfied when a person is a resident of the district or is employed in the district. *See, e.g.*, *In re MoneyOnMobile, Inc.,* No.19-mc-80128-VKD, 2019 WL 2515612, at *2 (N.D. Cal. June 18, 2019) (a person who lived "Cupertino, California" resided in this District for purposes of Section 1782); *In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016) (statutory requirement was met because respondent "is employed in San Francisco and Palo Alto, and thus can be found within this Court's jurisdiction."); *In re Republic of Ecuador*, No. 2:11–mc–00052 GSA, 2011 WL 4089189, at *2 (E.D. Cal. Sept. 13, 2011) ("Dr. Mackay is currently employed at the University of California at Davis, and thus can be found within the jurisdiction of this Court.").[4]

Under this standard, Mr. Chao resides or is found in this District for purposes of Section 1782. *First*, according to a sworn affidavit filed by Mr. Chao and a related affidavit filed by a process server in New York State Court, Mr. Chao resides in a house in Atherton, California, which is part of the Northern District of California. Wang Decl. Ex. H and Ex. I. It appears from public records show that Mr. Chao and his wife continue to reside at that home, which is currently owned by a trust administered by Mrs. Chao. Wang Decl. Ex. J And Ex. K. *Second*, the Proxy Statement

---

[4] Other courts have concluded that, for purposes of Section 1782, whether a person or entity is "found" in a district is coextensive with the constitutional parameters of personal jurisdiction. *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."). The facts recited herein would satisfy this test too in light of Mr. Chao's extensive contacts with this District.

states that Mr. Chao's place of business is 2420 Sand Hill Road, Suite 200 Menlo Park, California 94025, in this District.  Wang Decl. Ex. C at 143. The website for the business located at that location also confirms that Mr. Chao is based in Silicon Valley. Wang Decl. Ex.  O. *Third,* public records also show that Mr. Chao (through the trust run by his wife) owns another apartment in San Francisco, California, in this District. Wang Decl. Ex.  L and Ex. M. *Fourth*, Mr. Chao's home address in Atherton is associated with a California LLC of which Mr. Chao is a member. Wang Decl. Ex N.

Accordingly, the Application satisfies Section 1782's first statutory requirement.

### B. Petitioner Seeks Discovery "For Use" in a Foreign Proceeding

Petitioner will use the requested discovery in the Appraisal Proceeding to establish the fair value of its 51job shares.  Courts in the United States have held that seeking discovery for use in appraisal actions in the Cayman Islands satisfies the statutory requirement of "for use" in a "foreign proceeding." *See, e.g.*, *In re Kingstown Partners Master Ltd.*, No. 21-MC-691-LTS, 2022 WL 1081333, at *4-5 (S.D.N.Y. Apr. 8, 2022) (standard met for dissenters in Cayman appraisal action even after deadline for expert reports on valuation had expired); *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*, No. 4:21-mc-00153-AGF, 2021 WL 1611673, at *2 (E.D. Mo. Apr. 26, 2021) (dissenting shareholders in a Cayman appraisal case "clearly seek discovery of materials 'for use' in a foreign proceeding").

Furthermore, to satisfy the statutory "for use" requirement, a petitioner is not required to demonstrate that the discovery sought would be discoverable or admissible in the foreign proceedings.  *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977).  Rather, a petitioner must simply show that the discovery being sought is "tethered to a specific foreign proceeding and is relevant." *Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*, No. 18-mc-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018).

The discovery requested by Petitioner is relevant to the determination of the fair value for the dissenting shareholders' 51job shares and will be used solely for the Appraisal Proceeding.[5] Petitioner intends to provide to its expert and the Company's expert, consistent with the routine practice in Cayman appraisal litigation, the documents and deposition testimony obtained from this Section 1782 Application. The Cayman Court will heavily rely on such documents and testimony. *See* Dawson Decl. ¶¶ 12-13.  This clearly satisfies the "for use" requirement.

Therefore, the Application satisfies Section 1782's second statutory requirement.

### C.    Petitioner is an "Interested Person"

"[A] complainant in a foreign proceeding 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term." *Akebia Therapeutics*, 2014 WL 12845006 (quoting *Intel*, 542 U.S. at 256).  Because parties to foreign proceedings are "interested persons" under Section 1782, Petitioner, as a party to the Appraisal Proceeding, is without question an "interested person" for the purposes of this Application.  *Id.*

Accordingly, the Application also satisfies Section 1782's third statutory requirement.

## II.    The Discretionary *Intel* Factors Weigh in Favor of Granting the Application

Once Section 1782's statutory requirements are met, this Court has discretion to grant the Petition. *Intel*, 542 U.S. at 264.  In determining whether to grant the Application, the Court looks to the four *Intel* factors.  *Id.* at 244-245.  All four of these factors strongly favor granting the Application.

### A.    *Intel* Factor I: Respondent Is a Nonparticipant in the Appraisal Proceeding

The Supreme Court has explained that when a respondent is not a party to the foreign proceeding, "[its] evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.  That is precisely the situation here: Mr. Chao is not a party to the

---

[5] There is no question that the Cayman Court constitutes a "foreign tribunal" within the meaning of Section 1782. *In re Application of Akebia Therapeutics, Inc. for an Order Granting Leave to Issue Subpoena for the Taking of Discovery Pursuant to 28 U.S.C. 1782.*, No. CV 14 80294 MISC, 2014 WL 12845006, (N.D. Cal. Oct. 21, 2014) ("In the Ninth Circuit, Section 1782 is read broadly to include 'bodies of a quasi-judicial or administrative nature' as well as preliminary investigations leading to judicial proceedings.").

Appraisal Proceeding. Moreover, he is beyond the jurisdictional reach of the Cayman Court which does not have personal jurisdiction over him. Dawson Decl. at ¶¶ 29-30. This means that Petitioner has no practical way to obtain relevant evidence in Mr. Chao's possession, custody or control, other than discovery by way of Section 1782.

Accordingly, the first *Intel* factor—which asks whether the party from whom the discovery is sought is a party to the foreign proceeding—strongly supports granting the Application. *In re Wallis*, No. 18-mc-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018) (finding that the first *Intel* factor weighed in favor of issuing the subpoenas because none of the respondents were participants to the litigation and the discovery by the proposed subpoenas was currently outside the reach of the foreign court); *In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Respondent] is not a party in the international arbitration, and therefore this factor weighs in the [petitioner's] favor.").

### B.  *Intel* Factor II: The Cayman Court Is Receptive to U.S. Judicial Assistance

Under the second *Intel* factor, courts may "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. As explained in the Dawson Decl., Cayman courts are receptive to using evidence obtained through US discovery procedures. Dawson Decl. ¶¶ 21-26. Indeed, the Cayman Islands Court of Appeal ("CICA") expressly held in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553, that the right to obtain full discovery, including pre-trial deposition testimony, under Section 1782, "is a right conferred by U.S. law-it is *not a right* conferred by, or *to be withheld under Cayman law*." *Id.* ¶ 22 (citing *Lyxor* and emphasis added herein). *Id.* ¶¶ 22-24. Moreover, the CICA has underscored that third-party materials are relevant in Section 238 proceedings. *Id.* ¶ 22 (discussing *Re Qunar Cayman Islands Limited* (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) ("if third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company. . . .")). CICA decisions are binding on the Cayman Court presiding over the Appraisal Proceeding. *Id*. ¶¶ 15, 22.

11

As noted, the Cayman Court will consider all evidence that may be relevant to the valuation of the shares at issue in the Section 238 proceeding. Dawson Decl. ¶¶ 14-20. For example, the CICA held in *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585 that "[t]he sole task of the court is to determine the fair value of the dissenters' shares. To do that, it needs full information."). *Id.* ¶ 15 and Exhibit 8 to Dawson Decl. This process of considering all relevant information often requires a significant amount of discovery. As the CICA noted in *Shanda Games Limited* [2018 (1) CILR 352], "[s]ince the fair value is not necessarily the same as the merger price or the price at which the shares were trading before the market in them was affected by knowledge of the merger, it is inevitable that the determination will involve an assessment of a substantial quantity of information relating to the financial affairs of the company whose shares are to be valued." *Id.* ¶ 15 and Exhibit 7.

The Cayman Court will also consider evidence as to whether the deal process itself was open, competitive, and fair. *See* Dawson Decl. Ex. 1 (*In the Matter of Nord Anglia Education, Inc.* (Unreported, 17 March 2020)) (considering several conduct-related factors when considering the reliability of the deal price as a guide to the fair value of the dissenting shareholders' shares); *see also* Dawson Decl. Ex. 2 (*In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J, 23 September 2020)) (same).

Furthermore, U.S. courts have consistently recognized that Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be independently discoverable or available under Cayman law. *FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) (granting document and deposition discovery for use in Cayman Islands appraisal proceeding) (attached as Exhibit P to Wang Decl.); *In re Hopkins*, No. 20-mc-80012-SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought by [petitioner]."); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be

discoverable under Cayman law") (citations omitted); *In re Penner*, No. 17-cv-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (Cayman court "is open to receiving § 1782 discovery").

Here, the Cayman Court, in a Directions Order entered in the Appraisal Proceeding following a hearing, acknowledges the possibility that foreign discovery applications, including applications under Section 1782, may be brought and requires applicants to "make all reasonable efforts to do so expeditiously." Dawson Decl. Ex. 5 at ¶ 47; *see also id*. ¶¶ 47-48, 50-52 (setting forth timing and procedural requirements regarding the filing of third-party discovery applications); Dawson Decl. ¶ 25 (the Cayman Court "considered and approved of the prospect of parties seeking relief under Section 1782"). As a result, there can be no plausible argument that the Cayman Court is not open to Section 1782 discovery in the Appraisal Proceeding.

Accordingly, the second *Intel* factor weighs heavily in favor of granting the Application.

### C. *Intel* Factor III: The Application Is Not an Attempt to Circumvent Cayman Law

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *See Intel*, 542 U.S. at 264-265. This Court has previously held that this factor weighs in favor of discovery "unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence." *In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *4 (N.D. Cal. Oct. 14, 2021) (citing *Raiffeinsenbank*, 2016 WL 6474224, at *5).

As explained above, the Cayman Court welcomes evidence that a party can obtain by using Section 1782. There is no Cayman law or Cayman court ruling that would prohibit the introduction of Section 1782 evidence. Dawson Decl. ¶ 21. Nor has the Cayman Court denied a request for the discovery sought by this Application.[6]

---

[6] Petitioner need not exhaust discovery efforts in the foreign proceeding before resorting to Section 1782. *De Leon v. Clorox Company*, No. 19-mc-80296-DMR, 2020 WL 4584204, at *8 (N.D. Cal. Aug. 10, 2020) (no requirement to first seek discovery in foreign tribunal); *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[A]n applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782."). Moreover, this Court is not required to determine whether the evidence obtained from Respondent would be discoverable or admissible in the Appraisal Proceeding. *In re Mireskandari*, No. 12-cv-2865-IEG (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012).

Accordingly, the third *Intel* factor also weighs in favor of granting the Application.

### D. *Intel* Factor IV: The Discovery Sought Is Not Unduly Burdensome

Under the fourth *Intel* factor, a court may consider whether the discovery requests are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265. The standard used to evaluate whether a discovery request is burdensome is the same standard that applies to any federal civil litigation. *In re Credit Suisse Virtuoso*, No. 21-mc-80308-JCS, 2022 WL 1786050, at *12 (N.D. Cal. June 1, 2022) ("The proper scope of [discovery] under § 1782 is generally determined by the Federal Rules of Civil Procedure."). Under this standard, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Illumina Cambridge Ltd. v. Complete Genomics, Inc.,* No. 19-MC-80215-WHO(TSH), 2020 WL 820327, at *7 (N.D. Cal. Feb. 19, 2020) (applying the standard).

The discovery requested by Petitioner here fully complies with this standard and is consistent with the discovery granted in comparable recent cases. *See, e.g.*, *Kingstown*, 2022 WL 1081333, at *6 (scope of discovery was appropriate given "the substantial amount in controversy in the FGL Appraisal, Respondents' access to information relevant to that proceeding, and the parties' resources."); *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021) ("The scope of the categories of subject matter sought by the subpoena is reasonable given the nature of and BofA Securities' role in the transactions at issue in the appraisal action.").[7] The Merger was a complex $4.3 billion corporate transaction and the Subpoena is tailored to seek only documents and information directly relevant to core issues in the Appraisal Proceeding, including: (i) the fairness of the original Merger price and the revised Merger price, and the process

---

[7] Courts commonly order production of responsive discovery that Section 1782 respondents have in their possession, custody, or control, regardless of the physical location of that discovery. *See, e.g.*, *Illumina* 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) (ordering production of documents based in China because "concerns about producing documents located outside the United States [are] largely anachronistic"). Therefore, to the extent that Mr. Chao has responsive documents located outside the United States, he is obligated to produce them.

leading to their approvals by the Special Committee and the Company's board; (ii) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by the Company's board, or the Special Committee, or provided to shareholders; (iii) any alternative bids to acquire the Company; and (iv) the shareholders' approval of the Merger. These issues will be central in the Appraisal Proceeding and are appropriately subject to discovery through Section 1782.[8]

In addition to seeking this universe of highly relevant documents, Petitioner also seeks to depose Mr. Chao. Courts have found that depositions "are standard practice in U.S. civil litigation and are not burdensome." *Illumina*, 2020 WL 820327, at *10; *see also Mireskandari*, 2012 WL 12877390, at *4 ("The Court finds that these deposition topics are appropriate, as they are relevant to Applicant's claim."). This conclusion is based on the presumption that "[t]he Rules of Civil Procedure themselves ensure that the length, time and place of the deposition do not impose an undue burden." *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020) (citing Fed. R. Civ. P. 45(d)(1)). A deposition of Mr. Chao will yield relevant testimony that will significantly aid the Cayman Court in determining the fair value of the dissenting shareholders' former stakes in the Company. As noted by Mr. Dawson, the Cayman Court has the discretion to admit U.S. style deposition transcripts. Dawson Decl., ¶¶ 24, 31-33. Indeed, transcript from a Section 1782 deposition was admitted recently in a Cayman appraisal proceeding. *Id*. at ¶ 33.

While Petitioner does not foresee any burden issues in light of the Subpoena's reasonable scope, Petitioner is willing to meet and confer in good faith with Mr. Chao to address any concerns that he may have.[9] Accordingly, the fourth *Intel* factor weighs in favor of granting the Application.

---

[8] The potential possibility that Petitioner may obtain some of the discovery requested herein in the Appraisal Proceeding is not a basis to deny this Application. A sister court in California recently held that a Section 1782 petitioner was "entitled to, just as someone would be in conducting discovery in a regular civil case in the United States, to test two productions against each other and . . . to ask you for documents to ensure that . . . what they are getting from the Company is exhausted and vice versa." *FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21- mc-1019, ECF No. 40, at 26-27 (C.D. Cal. Nov. 22, 2021) (Wang Decl. Ex. Q at 27).

[9] For example, Petitioner is open to deposing Respondent remotely to reduce burden. Approving this Application will not preclude Mr. Chao from meeting and conferring with Petitioner

Footnote continued on next page

# CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the Application for an order pursuant to 28 U.S.C. § 1782.

Dated: March 10, 2023

By: /s/ Marc S T Dworsky

**REID COLLINS & TSAI LLP**
Marc S T Dworsky (State Bar No. 157413)
920 Camino Viejo
Montecito, CA 93108
(626) 429-4022
mdworsky@reidcollins.com

**REID COLLINS & TSAI LLP**
Minyao Wang*
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
mwang@reidcollins.com
yjaffe@reidcollins.com

**REID COLLINS & TSAI LLP**
Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

*Counsel for Petitioner*

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

*Additional Counsel*

**Pro hac vice* applications forthcoming

---

or ultimately "from bringing a motion to quash or modify" the discovery sought if no agreement is reached. *Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *7. Courts expect parties in the first instance to attempt to resolve their differences without judicial intervention regarding the scope of a subpoena. *See de Leon*, 2020 WL 4584204, at *9.