# EXHIBIT A

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| In re Application of 507 Summit LLC | ) |  |
|---|---|---|
| *Plaintiff* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
| *Defendant* | ) |  |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: David Katsujin Chao
72 Ralston Road, Atherton, CA 94027

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Lexitas<br>One Embarcadero Center, Suite 500<br>San Francisco, CA 94111 | Date and Time:<br>06/05/2023 9:00 am |
|---|---|

(or alternatively at a place and time to be negotiated by the parties)
The deposition will be recorded by this method: Stenographic and video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
See Schedule A, attached hereto. You are required to produce by April 20, 2023, to Lexitas, One Embarcadero Center, Suite 500, San Francisco, CA 94111 (production may also be made via email to the undersigned counsel at mwang@reidcollins.com).

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/09/2023

*CLERK OF COURT*

OR

_____          /s/ Minyao Wang
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* 507 Summit LLC , who issues or requests this subpoena, are:

Minyao Wang, Reid Collins & Tsai LLP, 420 Lexington Avenue, Ste. 2731, New York, NY 10170, mwang@reidcollins.com, (212) 344-5200

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 3:23-mc-80069   Document 2-1   Filed 03/10/23   Page 3 of 17

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

(a) "ALTERNATIVE TRANSACTION" means with respect to the COMPANY, any transaction or potential transaction other than the MERGER.

(b) "AMENDMENT ONE" means Amendment No. 1 to the ORIGINAL MERGER AGREEMENT, dated as of March 1, 2022, between the COMPANY and MERGER SUB.

(c) "BOARD" means the COMPANY's Board of Directors.

(d) "BUYER GROUP" means the following entities, their parents, subsidiaries, affiliates, and other entities under their control and any of their employees, attorneys, officers, directors, managers, members, advisors, agents, representatives, PROFESSIONALS, or all other persons acting or claiming to act on their behalf:

(i) MERGER SUB;

(ii) the DCP FILING PERSONS;

(iii) the OCEAN LINK FILING PERSONS; and

(iv) the FOUNDER FILING PERSONS;

(e) "COMMUNICATIONS" means and include any transmission or exchange of any information, whether orally or in writing, including, without limitation, any conversation or discussion by means of letter, note, memorandum, inter-office correspondence, telephone, electronic mail, telegraph, telex, telecopy, cable communicating data processors, or some other electronic or other medium.

(f) "COMPANY" or "51JOB" means 51job, Inc., and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents,

1

PROFESSIONALS, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

(g) "Concerning" means relating to, referring to, in connection with, pertaining to, describing, reflecting, discussing, analyzing, regarding, summarizing, evidencing, embodying, or constituting.

(h) "CONTINUING SHAREHOLDERS" means the MANAGEMENT CONTINUING SHAREHOLDERS and RECRUIT.

(i) "DCM ENTITIES" means: DCM Management Co., L.L.C.; DCM Management Co. VI, LLC; DCM Management Company IV, L.L.C.; DCM Management Company V, L.L.C.; and DCM Management, Inc., and each entity's parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, PROFESSIONALS, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

(j) "DCP FILING PERSONS" means DCP Capital Partners II, L.P. and Oriental Poppy Limited, and each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on either entity's behalf or subject to either entity's control, and including any other entities in which each entity has or had an ownership interest.

(k) "DOCUMENTS" shall have the meaning set forth in Fed. Rule Civ. Pro. 34(a)(1). It shall include, without limitation, all originals, duplicates, and drafts of each such DOCUMENTS, as well as DOCUMENTS that are electronically stored on backup tapes, and is meant to include all DOCUMENTS in YOUR possession, custody or control, whether the

DOCUMENTS were compiled by YOU or by any other person for any reason whatsoever. The term "DOCUMENT" also includes any message sent electronically, including, without limitation, any message sent via cell phone (including, without limitation, smart phones, iPhones, or Android phones), electronic tablet (including, without limitation, iPads or Android tablets), text, Blackberry Messenger, Facebook Messenger, Google Chat, Google Talk, GroupMe, Jabber, Line, iMessage, Skype, Slack, Snapchat, Telegram, Viber, WeChat, or WhatsApp.

(l) "FAIRNESS OPINION" means the fairness opinion reflected in ANNEX C of the PROXY.

(m) "FOUNDER FILING PERSONS" means Mr. Rick Yan, RY Holdings Inc., RY Elevate Inc., and 51 Elevate Limited, and (as applicable) each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's or person's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's or person's behalf or subject each entity's or person's control, and including any other entities in which each entity or person has or had an ownership interest.

(n) "GO-SHOP" means a provision in a merger agreement that allows a company to seek out competing offers even after its board of directors has approved the transaction.

(o) "Kroll, LLC" means Kroll, LLC (f/k/a Duff & Phelps, LLC) and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and including any other entities in which it has or had an ownership interest.

3

(p) "KROLL SECURITIES" means Kroll Securities, LLC (f/k/a Duff & Phelps Securities, LLC) and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and including any other entities in which it has or had an ownership interest.

(q) "LENDERS" means Shanghai Pudong Development Bank Co., Ltd and China Merchant Bank Co., Ltd., and each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of their employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's behalf or subject to each entity's control, and including any other entities in which each entity has an ownership interest.

(r) "LLW HOLDING" means LLW Holding Ltd. and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and including any other entities in which it has or had an ownership interest.

(s) "MANAGEMENT CONTINUING SHAREHOLDERS" means Mr. Rick Yan, RY Holdings Inc., RY Elevate Inc., Ms. Kathleen Chien, and LLW HOLDING.

(t) "MERGER AGREEMENT" means the ORIGINAL MERGER AGREEMENT and AMENDMENT ONE.

(u) "MERGER" means all of the transactions contemplated by the MERGER AGREEMENT, including the merger among the COMPANY and the BUYER GROUP, which

became effective on or about March 6, 2022, by which the BUYER GROUP accomplished the privatization of the COMPANY.

(v) "MERGER SUB" means Garnet Faith Limited and its parents, subsidiaries, affiliates, and any entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

(w) "OCEAN LINK FILING PERSONS" means Mr. Nanyan Zheng, Mr. Tianyi Jiang, Alliance Ascend GP Limited, Alliance Ascend L.P., Ocean Link Partners II GP Limited, Ocean Link Partners II GP, L.P., Ocean Link Partners II, L.P., Ocean Ascend Holding Limited, and Ocean Ascend Limited, and (as applicable) each entity's parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each entity's or person's employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on each entity's or person's behalf or subject to its control, and including any other entities in which each person or entity has or had an ownership interest.

(x) "ORIGINAL MERGER AGREEMENT" means the agreement and plan of merger dated as of June 21, 2021, between the Company and Merger Sub.

(y) "ORIGINAL FAIRNESS OPINION" means the fairness opinion reflected in Annex C of the ORIGINAL PROXY.

(z) "ORIGINAL PROXY" means the Company's Form DEF 14A, dated July 6, 2021.

(aa) "PARTICIPANTS" means the Buyer Consortium, Recruit, Ms. Kathleen Chien, and LLW Holding.

(bb) "PROFESSIONAL" means any counsel, consultant, advisor, expert, agent, representative, or other person engaged to provide, or involved in providing, at any time any services to any person.

(cc) "PROXY" means the Company's Form DEF 14A, dated March 29, 2022.

(dd) "RECRUIT" means Recruit Holdings Co. Ltd., and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and including any other entities in which it has or had an ownership interest.

(ee) "ROCKETEER" means Rocketeer Management and its parents, members, shareholders, partners, owners, subsidiaries, affiliates, predecessors, successors, assigns, and each of its employees, directors, officers, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, and including any other entities in which it has or had an ownership interest.

(ff) "SPECIAL COMMITTEE" means the committee of members of the BOARD as publicly announced by the COMPANY on or about September 21, 2020, for purposes of evaluating the MERGER.

(gg) "YOU" and "YOUR" means David K. Chao and any of your employees, partners, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on Your behalf or subject to Your control, and including any other entities in which it has or had an ownership interest. For the avoidance of doubt, this shall include, without limitation, DCM ENTITIES.

**INSTRUCTIONS**

1. You are requested to produce all responsive DOCUMENTS and COMMUNICATIONS that are in your possession, custody, or control, wherever located, including those in the custody of Your PROFESSIONALS and affiliates.

2. If any part of the following Requests cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for your inability to respond to the remainder and stating whatever information or knowledge you have relating to the portion to which you do not respond.

3. If there are no DOCUMENTS responsive to any particular Request, please state so in writing.

4. Where any copy of any DOCUMENT whose production is sought herein, whether a draft or final version, is not identical to any copy thereof, by reason of alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

5. If any DOCUMENT requested herein was formerly in your possession, custody, or control (or that of your Professional) and has been lost or destroyed or otherwise disposed of, you are requested to submit in lieu of any such DOCUMENT a written statement (i) describing in detail the nature of the DOCUMENT and its contents, (ii) identifying the person(s) who prepared or authored the Document and, if applicable, the person(s) to whom the DOCUMENT was sent, (iii) specifying the date on which the DOCUMENT was prepared or transmitted, and (iv) specifying the date on which the DOCUMENT was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the person(s) requesting and performing the destruction.

6. All DOCUMENTS shall be produced in TIFF format with OCR images in color. All DOCUMENTS shall be produced with metadata, including the date created/sent, author,

recipients, cc-copies, and bcc-blind copies. All Microsoft Excel, .csv, Microsoft Powerpoint, Microsoft Word, and similar files shall be produced in their native format. We reserve the right to request that DOCUMENTS be produced in their native format.

7. A request for any DOCUMENT shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to such DOCUMENT, in addition to the DOCUMENT in its full and unexpurgated form.

8. References to the singular shall include the plural and references to the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive; and the present tense shall include the past tense and the past tense shall include the present tense as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

9. DOCUMENTS should be produced in the manner they are kept in the ordinary course of business. DOCUMENTS attached to each other should not be separated.

10. If any DOCUMENT is withheld or not produced under a claim of privilege, immunity, or otherwise, identify in writing the basis upon which the asserted privilege, immunity, or other reason for non-disclosure is claimed, in accordance with terms and conditions to be agreed upon by the parties or ordered by the Court.

11. If only a part of a DOCUMENT is protected by any privilege or immunity, the DOCUMENT shall be produced with only the privileged matter redacted.

12. The following Requests are to be deemed continuing in nature. If you become aware of or acquire additional information relating or referring to any of the following Requests, such additional information must be promptly produced.

13. Unless otherwise specified in any of the Requests, the date range for the Requests is July 1, 2020 – May 6, 2022.

**DOCUMENT REQUESTS**

1. All DOCUMENTS and COMMUNICATIONS Concerning the MERGER or the MERGER AGREEMENT.

2. All DOCUMENTS and COMMUNICATIONS Concerning AMENDMENT ONE.

3. All DOCUMENTS and COMMUNICATIONS Concerning the FAIRNESS OPINION.

4. All DOCUMENTS and COMMUNICATIONS Concerning the ORIGINAL FAIRNESS OPINION.

5. All DOCUMENTS and COMMUNICATIONS Concerning any ALTERNATIVE TRANSACTION considered, addressed, discussed, analyzed by YOU or presented to YOU.

6. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any member(s) of the BUYER GROUP Concerning the COMPANY or the MERGER.

7. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any member(s) of the SPECIAL COMMITTEE.

8. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and the government of the People's Republic of China Concerning the COMPANY, and/or the MERGER.

9. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and the BOARD or the COMPANY Concerning the COMPANY, any of the assets of the COMPANY, and/or the MERGER.

10. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and the MANAGEMENT CONTINUING SHAREHOLDERS (or any member of the MANAGEMENT CONTINUING SHAREHOLDERS), the CONTINUING SHAREHOLDERS (or any member of

9

the CONTINUING SHAREHOLDERS), the PARTICIPANTS (or any member of the PARTICIPANTS), ROCKETEER Concerning the COMPANY or the MERGER.

11. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and KROLL, LLC and/or KROLL SECURITIES Concerning the COMPANY or the MERGER.

12. All DOCUMENTS and COMMUNICATIONS Concerning the engagement of the COMPANY'S or the SPECIAL COMMITTEE's advisors (including ROCKETEER, KROLL, LLC, or KROLL SECURITIES, LLC).

13. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any other person or entity (including, without limitation, the LENDERS) Concerning the financing of the MERGER, including potential but unconsummated financing plans.

14. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and any other potential purchasers of a controlling interest in the COMPANY, or any PROFESSIONAL or representative of any other potential purchasers of a controlling interest in the COMPANY.

15. All DOCUMENTS and COMMUNICATIONS exchanged between YOU and the DCM ENTITIES concerning the MERGER.

16. All DOCUMENTS and COMMUNICATIONS Concerning YOUR vote in connection with the MERGER.

17. All DOCUMENTS and COMMUNICATIONS Concerning your relationship with the BUYER GROUP, the MANAGEMENT CONTINUING SHAREHOLDERS, the CONTINUING SHAREHOLDERS, the PARTICIPANTS, or ROCKETEER.

18. All DOCUMENTS and COMMUNICATIONS Concerning valuation reports, fairness or solvency opinions, appraisals, analyses, reviews, discounted cash flow or other comparable companies analysis, or other documents concerning the value, market value, book,

value or fair value of the COMPANY, its stock, and/or any of the COMPANY's assets or businesses, whether created by YOU or not.

19. All DOCUMENTS and COMMUNICATIONS Concerning any forecast of the COMPANY's future performance.

20. All DOCUMENTS Concerning or comprising assumptions underlying all analyses, opinions, or projections Concerning the COMPANY.

21. All materials including books, analyses, and/or presentations (including drafts) Concerning the MERGER, strategic alternatives, or any other offer as well as materials supporting such books, analyses, and/or presentations.

22. All DOCUMENTS and COMMUNICATIONS Concerning any inquiry, expression of interest, or proposal from any party to acquire any or all of the stock or assets of the COMPANY.

23. All DOCUMENTS and COMMUNICATIONS Concerning any condition that the MERGER be approved by a majority of the shares not held by the BUYER GROUP and its affiliates.

24. All DOCUMENTS and COMMUNICATIONS Concerning any condition that the MERGER be subject to a GO-SHOP.

25. All DOCUMENTS and COMMUNICATIONS Concerning regulatory developments in the Peoples' Republic of China and their purported or potential impact on or relations with the MERGER, the MERGER AGREEMENT or AMENDMENT ONE.

26. All DOCUMENTS and COMMUNICATIONS Concerning the trading price of the COMPANY's common stock.

27. All DOCUMENTS and COMMUNICATIONS Concerning purported or perceived macroeconomic developments and market conditions resulting in the renegotiation of the MERGER price and AMENDMENT ONE, including market conditions relating to People's Republic of China's technology companies, COVID-19's impact on the COMPANY, and any foreign exchange issues.

28. All DOCUMENTS and COMMUNICATIONS Concerning any plan to list the shares of the COMPANY in a stock exchange (including, without limitation, the stock exchange in Hong Kong, Shanghai or Shenzhen) after the conclusion of the MERGER. For purposes of this Request, the ending date range is the present time.

29. All DOCUMENTS and COMMUNICATIONS Concerning any objection by a shareholder to the MERGER, including any DOCUMENTS responding to, discussing, analyzing, or commenting on the objections received from shareholders.

30. All DOCUMENTS, COMMUNICATIONS, calendar entries, and notes Concerning any meeting of the SPECIAL COMMITTEE or the BOARD that YOU attended or took part in, directly or indirectly.

31. All DOCUMENTS and COMMUNICATIONS Concerning the appointment of and/or the independence of members of the SPECIAL COMMITTEE.

32. All DOCUMENTS, COMMUNICATIONS, calendar entries, or notes Concerning any meeting with the COMPANY, the BOARD and/or the SPECIAL COMMITTEE, including minutes and agendas of Board meetings and any supporting documentation and other reports prepared for Board meetings.

33. All non-privileged DOCUMENTS and COMMUNICATIONS Concerning a potential, pending, or ongoing appraisal proceeding in the Grand Court of the Cayman Islands,

including internal reports, risk analysis, and discussions of implications for public relations and business strategy.

34. All DOCUMENTS and COMMUNICATIONS produced as part of any other proceeding brought pursuant to 28 U.S.C. § 1782 (or a similar law or legal rule) Concerning the MERGER, including, without limitation, any production YOU have made or will make in Case No. 4:23-mc-80020-DMR in the United States District Court for the Northern District of California.

35. All DOCUMENTS and COMMUNICATIONS Concerning the retention, collection and review of DOCUMENTS in response to this Subpoena.

## SCHEDULE B

## DEPOSITION TOPICS

The definitions in Schedule A are incorporated by reference. YOU shall testify concerning:

1. All DOCUMENTS, and the subjects they cover, produced by YOU in response to this Subpoena and the method by which such DOCUMENTS were identified, collected, and reviewed for production.