**REID COLLINS & TSAI LLP**
Marc S T Dworsky (State Bar No. 157413)
920 Camino Viejo
Montecito, CA 93108
(626) 429-4022
mdworsky@reidcollins.com

**REID COLLINS & TSAI LLP**
Minyao Wang*
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
mwang@reidcollins.com
yjaffe@reidcollins.com

**REID COLLINS & TSAI LLP**
Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

*Additional Counsel*

*\*Pro hac vice* applications forthcoming

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Application of<br><br>507 SUMMIT LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use In a Foreign Proceeding. | Case No. 23-mc-80069<br><br>**DECLARATION OF SAMUEL MARTIN PIERCE DAWSON IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

I, Samuel Martin Pierce Dawson, hereby declare under penalty of perjury that the following is true and correct:

1. I am an attorney admitted to practice law in the Cayman Islands. I was admitted as an Attorney-at-Law of the Cayman Islands in 2006.

2. I am a partner at the law firm of Carey Olsen, resident in its office in the Cayman Islands. With foundational roots going back to 1898, Carey Olsen is one of the world's oldest and largest offshore law firms. It has offices in eight different jurisdictions around the world.

3. I graduated from Otago University, Dunedin, New Zealand with a Bachelor of Laws degree and a Bachelor of Arts (Art History) degree in 1996. I was admitted as a barrister and solicitor of the High Court of New Zealand in 1996.

4. I am the head of Carey Olsen's dispute resolution and insolvency and restructuring practice in the Cayman Islands. I have been recognized by independent legal directories, including *Chambers Global, Legal 500,* and *Who's Who Legal*.

5. Throughout my 16 years as an admitted attorney in the Cayman Islands (and during my 5 years of prior practice in New Zealand), I have specialized in advising clients with respect to complex commercial litigation and insolvency matters. I also regularly appear as an advocate before the Cayman Islands' courts representing clients in relation to commercial litigation and insolvency matters, including the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court").

6. I have previously provided expert written evidence as to the Cayman Islands company and insolvency law for hearings conducted before the High Court of England and Wales as well as Federal District Courts in the United States of America.

7. I make this declaration in support of the application (the "Application") filed concurrently by 507 Summit LLC ("507 Summit" or "Petitioner") in this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") granting Petitioner leave to serve a subpoena on David Katsujin Chao ("Mr. Chao" or "Respondent") for document production and for deposition testimony.

8. The discovery being requested through the Petition will be used in connection with an appraisal proceeding (the "Appraisal Proceeding") pending before the Cayman Court filed by 51job, Inc. ("51job" or the "Company"). I am 507 Summit's Cayman Islands counsel in the Appraisal Proceeding. The Company is incorporated in the Cayman Islands and headquartered in Shanghai, China. It was recently delisted from the NASDAQ stock market in the United States as a result of a go private transaction (the "Merger").

9. I attach hereto true and correct copies of the following documents that I refer to in this declaration:

(a) As **Exhibit 1**, the judicial decision in *In the Matter of Nord Anglia Education, Inc.* (Unreported, 17 March 2020);

(b) As **Exhibit 2**, the judicial decision in *In the Matter of Trina Solar Limited* (Unreported, Grant Court, Segal J, 23 September 2020);

(c) As **Exhibit 3**, the Cayman Court's judgment dated December 2, 2022 arising from the directions hearing in the Appraisal Proceeding held on November 21 and 22, 2022: *In the Matter of 51job, Inc.* (Unreported, 2 December 2022);

(d) As **Exhibit 4**, the petition filed with the Cayman Court by 51job on 15 July, 2022;

(e) As **Exhibit 5**, the petition filed with the Cayman Court by certain of the dissenting shareholders on 15 July, 2022;

(f) As **Exhibit 6**, the Directions Order of the Cayman Court following a directions hearing in the Appraisal Proceeding on 21-22 November 2022 (the "Directions Hearing");

(g) As **Exhibit 7**, the judicial decision in *Shanda Games* [2018 (1) CILR 352];

(h) As **Exhibit 8**, the judicial decision in *Qihoo 360 Technology Co.*, Ltd [2017 (2) CILR 585];

(i) As **Exhibit 9**, the judicial decision in *Re FGL Holdings* (Unreported, 1 September 2022);

DECLARATION OF SAMUEL MARTIN PIERCE DAWSON IN SUPPORT OF
PETITIONER'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

(j) As **Exhibit 10**, the judicial decision in *Lyxor Asset Management SA. v. Phoenix Meridian Equity Limited* [2009] CILR 553;

(k) As **Exhibit 11**, *Grand Court Rules, Order 24, rule 2(1)*;

(l) As **Exhibit 12**, *Vernon v Bosley* [1994] PIQR P337; and

(m) As **Exhibit 13**, *In the Matter of Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund et al.* 2018 (1) CILR 199.

**The Cayman Islands Appraisal Process**

10. 507 Summit, along with several other dissenting shareholders, was a shareholder of the Company prior to the Merger that gave rise to the Appraisal Proceeding. The Appraisal Proceeding relates to 507 Summit's objection to, and dissent from, the Merger. It is brought under Section 238 ("Section 238") of the Cayman Islands Companies Act (2022 Revision), a statutory provision that allows shareholders to dissent from a merger and demand payment of the fair value of their shares.[1]

11. The Company filed a petition before the Cayman Court on July 15, 2022 (Exhibit 4), to commence the Appraisal Proceeding. Certain dissenting shareholders filed a separate petition the same day (Exhibit 5), and the parties have agreed that these proceedings will be consolidated and heard together.

12. At the trial of the petition in the Appraisal Proceeding, the Grand Court will be required to determine the "fair value" of the dissenting shareholders' former shareholdings in the Company together with a fair rate of interest, if any, to be paid by the Company upon the amount determined to be fair value.

13. Cayman Islands judges who hear Section 238 cases are not experts in valuation. Instead, they rely on the valuation experts appointed by the subject company and dissenting shareholders, respectively, who provide their expert opinion and testimony on the fair value of the

---

[1] The statutory regime permits both the company undergoing the statutory merger and the dissenting shareholders to originate a fair value appraisal proceeding in the Cayman Court. In this case, both the Company and a group of dissenting shareholders did so. The Company's Petition is at Exhibit 4. The group of dissenting shareholders' Petition is at Exhibit 5. Paragraphs 1-2 of the Directions Order at Exhibit 6 provides for the proceedings commenced by the separate Petitions to be merged and consolidated into one proceeding.

3

1 | dissenting shareholders' shares. 507 Summit intends to provide discovery obtained from this
2 | application to the dissenting shareholders' valuation expert. The discovery will also be made
3 | available to the Company and its valuation expert. Therefore, the discovery sought may be used by
4 | experts retained by the dissenting shareholders (including Petitioner) and the Company, as well as
5 | the Cayman Court itself in the Appraisal Proceeding.

14. In appraisal cases, neither the experts nor the Cayman Court are limited to considering evidence related only to intrinsic valuation issues. It will also consider the facts, matters and circumstances surrounding the contemplation, negotiation, timing, structure and completion of the merger and the deal process that leads to the merger price being set.

15. Indeed, the Cayman Court has repeatedly held that discovery will extend to anything which bears on the value of the subject company or which could lead an expert on a "train of inquiry" regarding an issue relevant to valuation. The Cayman Islands Court of Appeal (the "Cayman Appellate Court") in *Shanda Games* [2018 (1) CILR 352], attached hereto as Exhibit 7, stated, at paragraph 22: *"it is inevitable that the determination will involve an assessment of a substantial quantity of information relating to the financial affairs of the company whose shares are to be valued."* The Cayman Appellate Court in *Qihoo 360 Technology Co., Ltd* [2017 (2) CILR 585], attached hereto as Exhibit 7, likewise stated at paragraph 19 *"the sole task of the Court is to determine the fair value of the dissenters' shares. To do that, it needs full information."* Importantly, decisions of the Cayman Appellate Court are binding on the Cayman Court.

16. It is also not uncommon for experts and the Cayman Court in Section 238 proceedings to conclude that the deal process leading to the merger of a company was so flawed such that the transaction price is not informative, or is less informative, as to the fair value of the subject company. Therefore, it is likely that the Appraisal Proceedings will consider in detail the deal process of the Company concerning the Merger.

17. Such an analysis was undertaken by the Grand Court in each of the three more recent Cayman Islands fair value judgments, namely in the matters of *Re FGL Holdings* (Unreported, 1 September 2022) (attached hereto as Exhibit 9), *Re Nord Anglia Education, Inc.* (Unreported, 17 March 2020) (attached hereto as Exhibit 1) and *Re Trina Solar Limited* (Unreported, 23 September

4

1 | 2020) (attached hereto as Exhibit 2). In each of these cases, the respective companies argued that
2 | transaction price was a useful indicator of fair value.

18. In *FGL Holdings*, the Grand Court had regard to a number of conduct-related factors (Exhibit 9 ¶¶ 524 *et seq*), considering in particular the merger voting arrangements and whether the CEO was conflicted when negotiating the terms of the merger.

19. In *Nord*, the Grand Court, again, had regard to a number of conduct-related factors, including: (a) whether the transaction process "had been carried out in good faith" (Exhibit 2 ¶¶ 114(a) and 125); (b) the motivations of the 'Baring Funds' who had interests on both the buy and sell sides of the transaction (*id.* ¶ 114(b)); (c) the manner in which conflicts were managed (*id.* ¶ 126); (d) the influence that the existence of a controlling shareholder had on the special committee's negotiating stance (*id.* ¶¶ 118 and 124); and (e) the fact that attempts were made to find other bidders (*id.* ¶ 120(a)).

20. Similarly, in *In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J, 23 September 2020), the Cayman Court, in determining fair value by assigning a 45% weighting to deal price, considered conduct-related factors such as: (a) a member of the company's two person special committee's (whose function was to evaluate the merger proposal) failure to ensure and/or obtain competing bidders (Exhibit 2 ¶ 161); (b) the infrequency of special committee meetings and the special committee's poor record-keeping (*id.* ¶¶ 162 and 163(f)); (c) the special committee's failure to conduct a comprehensive pre-market signing check by failing to properly consider and/or by excluding the company's major competitors as potential strategic buyers, or at least to take advice on the issue (*id.* ¶ 163); (d) the special committee's conduct in negotiating and signing-off on the deal price with the buyer group (*id.* ¶ 164-165); and (e) the way conflicts were managed (*id.* ¶¶ 178-180).

**The Grand Court's Receptivity to Section 1782 Discovery**

21. Based on my understanding and experience as a Cayman Islands attorney, Cayman Islands courts have been receptive to and welcome evidence obtained through foreign (*i.e.*, non-Cayman Islands) evidence-gathering laws, including Section 1782. I am aware of no Cayman Islands law prohibiting a party from seeking evidence via Section 1782 or declaring such evidence

5
DECLARATION OF SAMUEL MARTIN PIERCE DAWSON IN SUPPORT OF
PETITIONER'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

inadmissible in Cayman legal proceedings. Section 1782 evidence has been used in most of the recent appraisal litigation in the Cayman Islands. This approach is consistent with the Cayman Appellate Court's view that third-party evidence is relevant and important in such litigation. As that court stated in *Qunar*, attached as Exhibit 13, "if third party valuations in the possession of the company are relevant, so are third party valuations not in the possession of the company" (paragraph 60).

22. In fact, the Cayman Appellate Court in *Lyxor Asset Management SA. v. Phoenix Meridian Equity Limited* [2009] CILR 553 (Exhibit 10) expressly held that the right to obtain full discovery, including both pre-trial deposition testimony and documents, through Section 1782 "is a right conferred by U.S law-it is not a right conferred by, or to be withheld under Cayman law." *Id.* ¶ 57. It is important to note here again that decisions of the Cayman Appellate Court are binding on the Cayman Court.

23. The Cayman Appellate Court in *Lyxor* further ruled that because a party has a right to avail itself of a legitimate foreign evidence-gathering process, like Section 1782, a compelling reason (for example, when a party is acting oppressively) is required to deny the party the right to pursue discovery through Section 1782.

24. Moreover, courts in the Cayman Islands have the discretion to admit deposition transcripts from the United States. The Court expressly noted in paragraph 44 of *Lyxor* that U.S. rules of civil procedure governing depositions provided adequate protection against abuses. (Exhibit 10, *Lyxor* at ¶ 44).

25. In this case the Court has, at the Directions Hearing, already considered and approved of the prospect of parties seeking relief under Section 1782, choosing not to restrict applications under Section 1782 in any way, save to place a time limit on the latest time for such applications to be brought. Time has not yet begun to run for the purposes of that time limit (Exhibit 6, Directions Order at paragraphs 49 and 12.4).

26. It follows, therefore, that the Cayman Court is receptive to judicial assistance afforded by this Court through Section 1782 and that any evidence obtained thereby is not inadmissible as a result of the manner in which it has been obtained.

**Limitations to the Grand Court's Jurisdiction**

27. Parties to Cayman Islands proceedings (including Section 238 appraisal proceedings) are obligated to provide discovery of documents which are in their "possession, custody or power relating to any matter in question between them in the action" (Order 24 rule 2(1) of the Cayman Islands Grand Court Rules - Vol. 1 (2022 Consolidation)) (attached as Exhibit 11). Parties are not obliged to produce documents from third parties that are not otherwise in their own "possession, custody or power."

28. Where litigants before the Cayman Court seek discovery from non-parties who are not subject to the Cayman Court's jurisdiction, they will require the assistance of the court (or those courts) which has jurisdiction over the non-party.

29. Mr. Chao is not a party to the Appraisal Proceeding. I am advised that Mr. Chao resides in this District. Therefore, Mr. Chao is currently not subject to the jurisdiction of the Cayman Court, and the Cayman Court cannot compel discovery from him.

30. In the absence of jurisdiction over Mr. Chao, the Cayman Court will not be able to direct him to produce discovery in the Appraisal Proceeding. Therefore, absent assistance from this Court (being the court to whose jurisdiction I understand Mr. Chao is subject), 507 Summit will not have a practicable pathway to obtain any discovery directly from Mr. Chao.

**Admissibility of the Documents and Depositions Sought by the Petitioner**

31. According to Cayman Islands law, evidence is admissible if it is relevant and not otherwise subject to an exclusionary rule of evidence. The threshold for relevance is very low (Exhibit 12, *Vernon v Bosley* [1994] PIQR P337 at [339]).

32. Because the proposed deponents are not parties in the Appraisal Proceeding and cannot be compelled to be witnesses at trial, any deposition transcripts produced would be hearsay statements. Hearsay statements are admissible in the Appraisal Proceeding provided that the necessary practices and procedures of the Cayman Court are complied with.

33. I understand that deposition transcripts obtained pursuant to Section 1782 were submitted into evidence and considered by the Cayman Islands courts in a relatively recent Section 238 appraisal proceeding. *In the Matter of Nord Anglia Education, Inc.* (Unreported, 17 March

7

2020) (Exhibit 1), at paragraph 49, the Grand Court expressly references the 2,900 documents that the financial advisor to the special committee of the company's board of directors produced pursuant to a Section 1782 proceeding.

34. To the extent the contents of this Declaration are within my personal knowledge, they are true and accurate. To the extent the contents are not within my personal knowledge, they are true to the best of my current knowledge, information, and belief.

35. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 7, 2023, at Grand Cayman, Cayman Islands.

                                            Samuel Martin Pierce Dawson

DECLARATION OF SAMUEL MARTIN PIERCE DAWSON IN SUPPORT OF
PETITIONER'S APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782