# EXHIBIT 12

# VERNON v. BOSLEY

COURT OF APPEAL (Ralph Gibson, Farquharson, Hoffmann L.JJ.):
March 16, 1994

*Death of plaintiff's children—claim for psychiatric damage leading to breakdown of marriage—evidence of earlier affair by plaintiff—whether cross-examination of wife as to her knowledge of affair and its effect on the marriage allowed—need to weigh degree of relevance of evidence against other competing interests*

The plaintiff's two daughters were drowned in a road traffic accident as a result of the defendant's negligence. The plaintiff claimed that the psychiatric damage caused by the accident resulted in the collapse of his business and the breakdown of his marriage. His wife left him in 1992. It transpired that he had had an affair with another woman between 1983–1987. Counsel for the defendant wished to cross-examine the wife about her knowledge of the affair and, if she was unaware of it, whether it would have affected the marriage. The judge held that, in deciding whether evidence was admissible, the cardinal principle was relevance, and the degree of relevance of the evidence might have to be balanced against other considerations. He did not consider that the prejudice that the wife might suffer if she learned of her husband's infidelity was a prejudice which outweighed any relevance which the evidence might have, but concluded that the evidence would serve no useful purpose, and its relevance was therefore outweighed by its tendency to prolong the trial, complicate the issues and possibly cause unnecessary distress to the wife. He therefore ruled that such cross-examination should not be allowed. The defendant appealed.

**Held,** allowing the appeal, that on the assumption that the judge would have to decide whether the defendant's negligence caused or materially contributed to the breakup of the plaintiff's marriage and that the wife would be saying that in her opinion that was the case, it could not be said that evidence about the plaintiff's affair would necessarily be irrelevant. In considering the effect of such evidence on the trial and on the wife, the subject was not one on which a great deal of time was likely to be spent, and the distress to the wife was not a particularly significant factor, bearing in mind that she was likely to find out anyway when her solicitors obtained a copy of the judgment, and the admission had been made in open court and was in the public domain. "If evidence or the cross-examination of a witness is relevant it ought generally to be admitted in the absence of any abuse of process" (*per* Farquharson L.J.).

**Cases judicially considered:**
(1) *Ashmore v. Corporation of Lloyd's* [1992] 1 W.L.R. 446; [1992] 2 All E.R. 486.
(2) *Attorney-General v. Mulholland and Foster* [1963] 2 Q.B. 477; [1963] 2 W.L.R. 658; 107 S.J. 154; [1963] 1 All E.R. 767, C.A.
(3) *Jones v. NCB* [1957] 2 Q.B. 55; [1957] 2 W.L.R. 760; 101 S.J. 319; [1957] 2 All E.R. 155, C.A.

**Cases referred to in judgment:**
(1) *Berger v. Raymond Sun Ltd* [1984] 1 W.L.R. 625; (1984) 128 S.J. 223; (1984) 81 L.S.Gaz. 975.
(2) *Bradford City Metropolitan Council v. K* [1990] Fam. 140; [1990] 2 W.L.R. 532; [1989] 2 F.L.R. 507; (1990) 88 L.G.R. 201; (1990) 20 Fam. Law 136.
(3) *D v. NSPCC* [1978] A.C. 171; [1977] 2 W.L.R. 201; 121 S.J. 119; [1977] 1 All E.R. 589; 76 L.G.R.S, H.L.
(4) *Mood Music Publishing Co. Ltd v. DeWolfe Ltd* [1976] Ch. 119.

**Appeal** by the defendant Katherine Sarah Bosley against the ruling of

Sedley J. preventing cross-examination of the wife of the plaintiff, Peter Fraser Vernon on the subject of his fidelity.

*P. O'Brien, Q.C.* and *D. Pearce-Higgins* for the appellant (defendant).
*D. Blunt, Q.C.* and *J. Marks* for the respondent (plaintiff).

**HOFFMANN L.J.** This is an interlocutory appeal by leave of the judge from a ruling by Sedley J. on the admissibility of evidence in the course of a trial. The action is for what used to be called nervous shock but could more accurately be described as damage caused by mental trauma. The traumatic event was the tragic drowning of the plaintiff's two daughters on August 13, 1982, when the car in which they were being driven by the defendant left the road and plunged into a river. The plaintiff and his wife were called to the scene and witnessed an unsuccessful attempt to rescue their children.

Negligence is admitted and the only issue in the action is the amount of the damages. The plaintiff claims that the psychiatric damage caused by the accident resulted in, among other things, the collapse of his business and the breakdown of his marriage. The business went into receivership in January 1986. Since then, he has devoted himself entirely to prosecuting this action. He is claiming special damages of about £4.5 million for loss of earnings and profits. His wife left him in September 1992. For this he claims both general damages and special damages for the loss of services which she provided.

The case for the defence is that the accident, tragic as it was, had no effect upon the plaintiff's personality. He had suffered all his life from psychiatric disorder and continued to do so. The failure of the business was due to economic and other causes. The subsequent worsening of his personality disorder which led to the breakdown of his marriage was caused by his losing his business and afterwards becoming obsessed with this litigation.

The trial has so far lasted some seven weeks. The cross-examination of the plaintiff continued on and off for over five weeks, other witnesses being interposed in the course of his evidence. Most of this cross-examation concerned his claim for the failure of the business. But Mr O'Brien also elicited an admission that between 1983 and 1987 the plaintiff had had an affair with another woman. This was a period during which the wife gave birth to three children. So far as the plaintiff knew, his wife was still unaware of this relationship. He said that he had entered into the relationship because the other woman was more supportive and understanding than his wife.

The wife is about to give evidence. She has provided a witness statement which supports her husband's claim. She has petitioned for divorce and a decree nisi has been pronounced. But her claim for ancillary relief remains outstanding. Her prospects of obtaining any substantial financial settlement are entirely dependent on the success of the plaintiff's claim. He is on legal aid.

Mr O'Brien wants to put to the wife her husband's infidelity and cross-examine her about whether she knew about it and, if not, whether it would have affected the marriage. He says that this is relevant upon a number of grounds. If she knew, it may have been a cause of the breakdown of the marriage. If she did not know, it may show that the marriage was in any event a fragile one, dependent on the success of the husband's deception. Furthermore, the knowledge of her husband's adultery may affect her view of his character and her evidence about the causes of the behaviour which led to the breakdown of the marriage. For example, she says that the trauma

had caused her husband to lose interest in sex. She might wish to revise this opinion if she knew he was having sex with someone else. It might cause her to reassess his character and make her evidence generally less supportive, even if this would be to her financial disadvantage.

Mr Blunt for the wife asked for a ruling that such cross-examination should not be allowed. He argued that the wife's answers would be inadmissible on grounds of irrelevance or that even if they were admissible, the judge had a discretion to exclude the questioning on the ground that any relevance the answers might have would be outweighed by the distress which the questions would cause to the wife, to her future relationship with the husband and thereby indirectly to the children.

Mr O'Brien submits that in a civil case a judge has no discretion to exclude admissible evidence. Put like that, I would agree. I think that Otton J. was quite right to give such a ruling in *Bradford City Council v. K (Minors)* [1990] Fam. 140. But the argument is often a barren one, because the decision as to whether evidence is admissible can involve a balancing of interests indistinguishable from the exercise of a discretion. The cardinal principle of admissibility is relevance. But relevance is always a matter of degree. How relevant must evidence be in order to be admissible? Ordinarily, the threshold is very low. It is an important aspect of an adversary system of justice that a party should so far as possible be allowed to decide how to present his case. If he or his counsel thinks that an item of evidence or a line of cross-examination may be relevant, the court is generally very reluctant to shut it out. He should not be left with a feeling that he might have won if only he had been allowed to adduce evidence or ask questions which the judge refused to hear. Nor should he be unnecessarily controlled or directed in the way he conducts his presentation of evidence or cross-examination, particularly if he is represented by a professional advocate on whose sense of responsibility the court can rely. The judgment of Denning L.J. in *Jones v. National Coal Board* [1959] 2 Q.B. 55 is a classic statement of the case for judicial abstention.

But there are limits to the extent to which the parties can be allowed free rein. A party's right to choose how to present his case may have to be balanced against other legitimate public or private interests. For example, both the opposing party and the general public have an interest in keeping down the length and cost of litigation. On this ground, the judge will sometimes rule inadmissible the exploration of side-issues which, though possibly having some potential relevance, do not appear sufficiently relevant to justify the time and expense which would be required to investigate them. As Rolfe B. said in *Att.-Gen. v. Hitchcock* (1847) 1 Ex. 91:

> "The laws of evidence on this subject, as to what ought and what ought not to be received, must be considered as founded on a sort of comparative consideration of the time to be occupied in examinations of this nature and the time which it is practical to bestow on them."

Thus similar fact evidence is excluded in civil cases when, weighed against the time and expense which would be involved in its proper investigation and the disadvantage at which having to deal with such evidence would put the opposing party, its relevance appears insufficient to justify the undertaking. Or as Lord Denning M.R. said in *Mood Music Publishing Co. Ltd v. De Wolfe Ltd* [1976] Ch. 119:

"In a civil case the courts will admit evidence of similar facts if it is logically probative, that is, if it is logically relevant in determining the matter which is in issue, provided that it is not oppressive or unfair to the other side and also that the other side has fair notice of it and is entitled to deal with it ..."

Similar fact evidence is sometimes regarded as subject to a special exclusionary rule, but at least in civil cases I think it can easily be accommodated in the wider general principle by which the judge decides whether evidence is sufficiently relevant to be admissible. It shows that the degree of relevance needed for admissibility is not some fixed point on a scale, but will vary according to the nature of the evidence and in particular the inconvenience, expense, delay or oppression which would attend its reception. Similar fact evidence is an obvious case in which the prospect of having to investigate collateral issues makes it impossible for the court to take the relaxed attitude to relevance which it would ordinarily prefer. But there are other situations which may require a similar balancing of relevance against other interests. For example, having to answer a question may involve a witness in breaking a confidence imposed by his religion, profession or conscience. It is clear that the court will respect such obligations of confidence and not require them to be broken unless the evidence is necessary to enable justice to be done: see *Att.-Gen. v. Mulholland* [1963] 2 Q.B. 477. This case was, of course, concerned not so much with the admissibility of the evidence as the compellability of the witness to answer, but I think it also illustrates the broad principle that deciding the limits of the right of the litigant to adduce evidence requires weighing the degree of relevance of that evidence against competing interests.

It therefore seems to me that although a judge has no discretion to exclude admissible evidence, his ruling on admissibility may involve a balancing of the degree of relevance of the evidence against other considerations which is in practice indistinguishable from the exercise of a discretion. It is in my view essential, if judges are to be able to keep the length of trials within bounds and conduct the proceedings with due sensitivity to the interests of third parties and the wider public interest, that they should have the same lititude in deciding how the balance should be struck as this Court would accord to the exercise of a discretion. The undersirability of interference by this Court in the conduct of a trial has recently been emphasised by the House of Lords: see *Ashmore v. Corporation of Lloyd's* [1992] 1 W.L.R. 446. A ruling on admissibility which involves a weighing of relevance against other factors should not be disturbed unless it involves some error of principle.

The judge's analysis of the law was in my judgment impeccable. He acknowledged the importance of judicial restraint in litigation conducted under the adversary system. But he said that in exceptional cases, such restraint could not be maintained without causing unfairness to the other side or unnecessary prejudice to other public or private interests. He said, in my judgment correctly, that similar fact evidence was only one illustration of the general principle that

"a point comes at which literal admissibility has to yield to the constraints of proportionality ... Such proportionality may in any one

case depend on issues of remoteness, fairness, likely usefulness, the ratio of cost to benefit in terms of time or money and other things beside."

I think I would prefer "relevance" to "literal admissibility", but the general tenor of this passage expresses the principle which I have tried to explain in my own words, namely that in some cases a ruling on admissibility may involve weighing degree of relevance against "other things". The judge went on to say that this was not an exercise of discretion but an application of the law. As a matter of legal analysis, I agree. The concept of relevance which the law employs as the touchstone of admissibility will, in an appropriate case, necessarily involve the need to carry out a a balancing exercise. But from the point of view of an appellate court, the decision is entitled to the same respect as the exercise of a discretion.

How did the judge apply this principle? He did not think a great deal of Mr Blunt's submission that the distress which would be caused to the wife if she learned of her husband's infidelity was a prejudice which outweighed any relevance which the evidence might have. In his view, if she did not know already, she was likely to find out when her solicitors obtained a copy of the judgment or even the transcript of the husband's evidence for the purposes of her ancillary relief application. The husband's admission had been made in open court and was in the public domain. He accepted that it might be distressing for her to be cross-examined on the matter in open court, but he regarded this is a relatively minor debit item in the balance sheet.

There is a respondent's notice which challenges this finding. But I would agree with the judge. The wife left the husband more than a year ago. The marriage has completely broken down. She is engaged in litigation with him over financial matters and access to the children. It seems to me unlikely that after all the tragedy in her life, she will suffer serious distress if she learns that he had an affair 10 years ago, or is asked questions about the effect which this had (or would have had) on the marriage. Furthermore, it is the husband who is strenuously attempting to stop this information being communicated to the wife. It is he who has alleged that the defendant caused the breakdown of his marriage and thereby put in issue the strength of that marriage and the causes of its collapse. It seems to me wrong that he should invoke possible distress to his wife as a reason why she should give her evidence about that marriage on the false hypothesis that he was a loyal husband. It may well be that the wife knew all about it or would not have cared if she did. But the question is one into which the defendant is entitled to inquire.

In any case, I think that a judge should be very hesitant about restricting cross-examination on the grounds that the questions may cause distress to the witness. Because the right to cross-examine freely is so important, he should ordinarily rely upon the good sense of the advocate. It is a common feature of cross-examination that witnesses have to be asked questions which are painful and distressing. A judge should not restrict questioning on this ground unless he feels a high degree of confidence that the answers could not serve any useful purpose.

The judge nevertheless ruled against the cross-examination—at least, at this stage—for a different reason. He said that it would prolong and complicate the trial without adding significantly to the resolution of the issues. The reason was

"a likelihood that what Mr O'Brien elicits will simply bring me back to

> the central conundrum without helping to resolve it—namely, did the accident cause a change in Mr Vernon's personality and did that change cause, among other things, the breakup of his marriage? To inject into this inquiry the question: did Mr Vernon's infidelity cause or contribute to the breakup of the marriage? inexorably invites a further question: if so, did the accident cause or contribute to Mr Vernon's infidelity? Seen from the present evidential position, these questions represent a hall of mirrors in which no fixed end point is any longer discernible."

For these reasons, the judge concluded that the evidence would serve no useful purpose and its relevance was therefore outweighed by its tendency to prolong the trial, complicate the issues and possibly cause what would in the circumstances be unnecessary distress to the wife. He indicated that he would be willing to reconsider this ruling at a later stage but for the purposes of this appeal it stands as a prohibition on any cross-examination of the wife on the subject of the fidelity of her husband.

The judge has been hearing this case for seven weeks and is very likely to have formed provisional views on the evidence which influence what he thinks about the lines of inquiry which would serve a useful purpose. It may be difficult for him to explain this in full without giving the impression of having prematurely made up his mind. But I think that we should resist the temptation to read between the lines and take the reasons given in the passage I have cited at their face value.

We must therefore assume that the judge will have to decide whether the defendant's negligence caused or materially contributed to the breakup of the plaintiff's marriage. Furthermore, we must assume that the wife will be saying that, in her opinion, this was the case. In those circumstances, I cannot see how it can be said that evidence about the husband's affair will necessarily be irrelevant because it will produce a "hall of mirrors" in which it is impossible to say whether the affair was not itself caused or materially contributed to by the defendant's original act. That may be the eventual conclusion but equally it may not. The evidence may not support the proposition that mental trauma can cause adultery. The possibility that it might does not enable one to say now that cross-examination of the wife along the lines indicated at the beginning of this judgment could not serve a useful purpose. This assumption on the part of the judge does seem to me to constitute an error of principle.

Thus I think that the cross-examination has a potential relevance, sufficient to entitle the defendant to feel that she has not been allowed fully to deploy her defence if it is shut out. Is it nevertheless of insufficient relevance when one has regard to its effect on the trial and the wife? The subject is not one upon which a great deal of time is likely to be spent—at any rate, not when measured in the scale of the time which has been given to the other heads of claim. The wife will be questioned about it and I imagine that the experts may be asked their opinions about the effect of the accident on this aspect of the husband's conduct and possibly about the effect of his conduct on the marriage. None of this should take very long. As for the distress to the wife, I have already said that, like the judge, I do not regard this as a particularly significant factor.

If we reject the assumption of an inevitable hall of mirrors which formed the main basis of the judge's ruling, we must ourselves weigh up the balance of relevance and prejudice. In my judgment, neither head of prejudice—

prolongation or complication of the trial and distress to the wife—is sufficient to bring this into the exceptional class of cases in which it is right to deny a litigant the opportunity to cross-examine on potentially relevant matters. The cross-examination must be allowed to take its own course, guided only by the good sense and professional courtesy expected of cross-examining counsel.

When the judge gave his ruling against cross-examination, Mr O'Brien applied for leave to recall the plaintiff for further cross-examination about his affair. The judge refused this application and there is an appeal against this ruling as well. I think it is impossible to interfere with this exercise of the judge's discretion. He was prefectly entitled to think that Mr O'Brien had had the plaintiff in the witness box for long enough. But the judge may of course wish to reconsider this ruling in the light of anything which emerges in the cross-examination of the wife. On the ruling as to the cross-examination of the wife, however, I would allow the appeal.

**FARQUHARSON L.J.** On August 13, 1992, the plaintiff and his wife, Mrs Vernon, suffered the appalling tragedy of their two young children being drowned. The car in which they were travelling had fallen into a river in circumstances in which the driver was guilty of negligence.

In due course the plaintiff and his wife brought proceedings against the driver for nervous shock arising from her negligence. The wife's action was settled at an early stage but the plaintiff mounted a very substantial claim based largely on the collapse of his business in 1986. Since then his energies have been devoted exclusively to the pursuit of the present litigation. It is his case that as a result of the accident he has suffered a mental illness, namely a post-traumatic stress disorder, which has affected his behaviour.

Although he and his wife had three more children, the relationship between them deteriorated as a result of his conduct. In 1992 Mrs Vernon left him, taking the children with her. Subsequently she obtained a divorce.

The plaintiff's claim is now being tried by Sedley J. It has already taken more than seven weeks which have been largely occupied with the hearing of evidence about the plaintiff's commercial losses.

The trial is only concerned with the question of quantum, liability having been admitted. The parties have agreed on a list of issues to be tried which includes the following:

> To what extent, if any, has any deterioration in the plaintiff's mental condition attributable to the accident affected his family and relationships? In particular:
> (a) Did the plaintiff's wife leave him because of any deterioration in his mental conditions attributable to the accident?
> (b) If so, for how long would she have remained with the plaintiff had he not developed the mental condition attributable to the accident?

It is the plaintiff's case that he now suffers from the lack of care and secretarial assistance that he previously enjoyed from his wife. The question whether his wife's departure is attributable to his behaviour towards her as a result of the accident is therefore of considerable significance.

At some stage before or during the trial the defendant's advisers had access to various reports on the plaintiff by psychiatrists. From one of these emerged the fact that from 1983, the year after the accident, the plaintiff had a relationship with another woman which was clearly adulterous. The

plaintiff admitted the relationship during the course of his cross-examination.

Although divorced, Mrs Vernon is supporting her former husband in his claim and a proof of evidence has been taken from her. She will be called to give evidence of how her former husband's mental illness has deteriorated as a result of the accident until it reached such a state that she was forced to leave him. It must be acknowledged that she has a considerable interest in the plaintiff's claim being successful.

It is in these circumstances that Mr O'Brien for the defendant wishes to cross-examine Mrs Vernon about her knowledge, if any, of the plaintiff's affair. Such cross-examination would be directed to (a) establishing whether the breakdown of their marriage was due to the accident, and to (b) discouraging Mrs Vernon's present support for her husband when she learns of his infidelity. Mr Blunt opposed these submissions partly on the grounds that the cross-examination would cause distress to Mrs Vernon and the three children and partly because, as he submitted, the cross-examination was not relevant to any issue in the case.

The learned judge's initial reaction was that he would not permit any questioning of Mrs Vernon beyond a general inquiry whether the plaintiff had shown an interest in other women. He held that:

> "The collapse of the marriage undoubtedly followed the extra-marital relationship but to establish whether it was caused by the accident (which is what matters) would demand a fresh range of enquiry and a new depth of fact finding for which this court is unprepared and unequipped."

After further submissions, the learned judge later affirmed his ruling although leaving the matter open until after the psychiatric evidence had been heard. He considered that the cross-examination proposed by Mr O'Brien would be a distressing and possibly humiliating experience for Mrs Vernon. The learned judge said that his principal concern was the risk "of this enormously complex case ramifying yet further but ramifying into a topic which on what is now known to me there is little likelihood that I shall be helped to the conclusions I must reach on the agreed issues". He concluded that "although legally relevant and admissible in principle this line of enquiry in the present state of the evidence is not evidence which will serve a useful purpose in relation to the proceedings in hand". The learned judge was basing himself on the judgment of Donovan L.J. in *Attorney-General v. Mulholland and Foster* [1963] 2 Q.B. 477 at page 492.

It is with reluctance that I disagree with the admirable judgment of Sedley J. The first question is whether the proposed cross-examination is relevant. In the final citation, above, the learned judge accepted that it was. In my judgment its relevance is beyond argument. The plaintiff is claiming that the trauma of the accident caused a personality disorder so that his behaviour drove his wife from the matrimonial home. It must surely be open to the defendant to show if she can that the cause of Mrs Vernon's departure was his extra-marital behaviour. It is possible that when asked Mrs Vernon will say she knew nothing about the affair, in which event the defendant's case will be advanced no further, but that such questions are relevant I have no doubt.

The fact of being cross-examined about any knowledge she may have had of her former husband's infidelity may well be distressing, but cross-

examination of this nature is not unfamiliar in these courts and litigants and witnesses have to live with it. If the cross-examination at any stage becomes improper or oppressive it is the judge's due to stop it, but if it is relevant to an issue or issues in the case it is prima facie admissible.

The learned judge's reluctance to allow the cross-examination was because of his fear that the Court was unprepared and unequipped for a new depth of fact finding, and the ramifications of the case were such that there is little likelihood of his being helped in his conclusions.

Having regard to the time already expended on the other issues in the case I would discount the learned judge's anxieties in this context. We are told that the cross-examination of the plaintiff on this issue occupied little time compared with that which was directed to his business affairs. Similarly, it is difficult to conceive that the questions which Mr O'Brien wants to put to Mrs Vernon are going to occupy any extravagant amount of time. The delving into the extent of her knowledge of her former husband's affair with another woman is something the court is well-equipped to deal with and the ramifications are likely to be inconsiderable.

If evidence or the cross-examination of a witness is relevant it ought generally to be admitted in the absence of any abuse of process. Such a qualification does not arise here and I would allow the appeal.

**RALPH GIBSON L.J.** This is an interlocutory appeal, with the leave of the judge, from a ruling of Sedley J. given on March 14, 1994, in the course of a trial with reference to the permissible range of cross-examination of a witness. The trial is of a claim to damages for personal injury by the plaintiff, Mr Vernon. His claim is that he suffered psychological injury from witnessing the scene of the death by drowning in August 1982 of his two daughters. The car in which they were travelling fell into a river. The only issue is quantum of damage. After that tragedy, the plaintiff and his wife had further children, a son born in October 1983 and twins, a boy and girl, born in June 1985. The trial has been proceeding for seven weeks. The agreed list of issues on quantum is a four-page document. The issues on quantum include those relevant to the plaintiff's case that the psychological injury which he suffered in 1982 caused mental deterioration which, in turn, caused very large financial losses before, upon, and after the failure of a company called Precision Circuits in 1986.

The issue relevant to this appeal is issue number six:

> "To what extent, if any, has any deterioration in the plaintiff's mental condition, attributable to the accident affected: (i) his family and marital relationships? In particular, (a) did the plaintiff's wife leave because of any deterioration in his mental condition attributable to the accident? (b) if so, for how long would she have remained with the plaintiff had he not developed the mental condition attributable to the accident?"

The ruling of Sedley J. was given with reference to cross-examination of the plaintiff's wife. That ruling arose in the following circumstances. The plaintiff's wife left him, taking the children with her, in September 1992. A decree nisi of divorce was made on October 20, 1993. The wife has outstanding claims to financial relief for her herself and the children in the divorce proceedings. The plaintiff's action against the defendant began on August 8, 1985. The wife also issued proceedings. Her claim was settled in

1988. The plaintiff's claim with reference to the breakdown of his marriage extends to financial claims based upon the loss of care and services which would have been provided by his wife up to the date of judgment and in the future.

The cross-examination of the plaintiff extended over a long time. He is slow in dealing with questions. The financial claim advanced is complicated. Other witnesses have been interposed. Among the documents made available at the trial there were notes of a psychiatrist of interviews with the plaintiff. They were hard to decipher in photocopy form. When legible copies were provided, as I understand it in the course of the hearing, it was observed that the plaintiff had told that doctor of an association with another woman, and he was asked in cross-examination by Mr O'Brien for the defendant about it. He said that he had had a relationship going beyond friendship with that woman after the accident, between 1983 and 1987. He was not asked to identify the woman; nor was he asked more of the nature of the relationship, nor about where or in what circumstances the relationship was conducted. He said that his wife did not know about the affair. Mr O'Brien now thinks that he should have asked more questions. Later, as I will explain, he asked leave to recall the plaintiff for further cross-examination but the judge refused to give leave.

The wife is to be called as a witness for the plaintiff. Her proof has been disclosed on exchange of proofs. It includes assertions that, before the accident, she and the plaintiff had normal sexual relations but, since the accident, sexual relations have been very limited. She describes the deterioration of the relationship between her and the plaintiff and says that she was driven to go by reason of the increasingly prevailing atmosphere of distrust and destructive tension mainly arising from the relationship to, and handling of, the children on the part of the plaintiff.

On March 10, 1994, at the sitting of the Court, and before the wife was called to give evidence, Mr Blunt, for the plaintiff, applied for an order to exclude any cross-examination of the wife about the other woman. Notice of the intention to make the application had not been given. The ground of it was that the proposed line of cross-examination was irrelevant. If it was relevant, the Court had a discretion to exclude it on the ground that any answers would be of low probative value but highly prejudicial to the remaining relationship between the plaintiff and his wife and thus likely to cause harm to the children. Mr O'Brien's contentions were that the questions, in particular whether the wife had known of the relationship, were clearly relevant to the issue whether the breakdown of the marriage was due to the accident; and, further, there was a tactical interest in the use of the information. She was supporting the plaintiff's case and she had a financial interest in the outcome of it through her claims to financial relief. If she had not known of the affair, she might, as the judge understood what was submitted to him, "be dislodged from the supportive stance which she is adopting towards the plaintiff".

The judge's ruling was that "he would not initially permit any examination in chief or cross-examination of the wife beyond the point, conceded by Mr Blunt to be legitimate, of allowing her to be asked whether the plaintiff had shown an interest in other women". Mr O'Brien was to be free to renew his application at the end of his cross-examination in the light of what by then had been elicited. The judge made it clear at that point that he might either allow or disallow the application, or might further reserve the question until

he had heard the psychiatric and psychological evidence in the case, in which the wife might have to return for the completion of her cross-examination and re-examination.

His reasons were (i) he was not persuaded that any balance which he might be permitted by law to strick between the prejudicial and probative aspects of the evidence was likely to lead to its exclusion; (ii) the real question was whether it was going to be relevant at all eventually; *i.e.* the collapse of the marriage had followed the relationship with the other woman but to establish whether it—*i.e.* the relationship—was caused by the accident would demand a fresh range of inquiry and a new depth of fact finding for which the Court was unprepared and unequipped. If allowed to cross-examine the wife, Mr O'Brien might be able to suggest that the affair was a cause of the failure of the marriage but "none of this would tell the judge whether the fact that the plaintiff was seeking comfort or excitement or distraction in an affair in the year following the deaths of his children was itself a product of the trauma for which he claims damages". If the affair was the product of the trauma, then its contribution to the collapse of the marraige did not assist the defendant. If the affair was not the product of the trauma, the question would still be whether the marraige would have survived but for the accident. For that reason, he wished to keep under consideration the possibility of deferring a final decision until the psychiatric evidence had been taken.

The judge agreed to hear further submissions on the following day, Friday March 11. He rejected the submission made for the plaintiff that he could not reconsider the matter having once ruled. There had been no reliance on the ruling. This argument has not been renewed in this Court. The judge was, I think, clearly right in his view that he was entitled to reconsider his ruling.

Upon the renewed argument, the judge was referred to authority. He gave his further ruling on Monday, March 14. It was to the effect that he would not permit cross-examination of the wife "beyond the point indicated", *i.e.* of asking whether the plaintiff has shown an interest in other women with liberty to Mr O'Brien to renew his application.

Upon that ruling being made, Mr O'Brien applied for leave further to cross-examine the plaintiff. The judge, as I have said, refused that application but gave no reasons. We are invited to assume that the judge considered there to be no reason to permit the defendant to re-open the topic having had the chance to ask questions about it.

The reasons given by the judge for his final ruling can, I believe, be fairly summarised as follows:

(i) The court has discretion or power in civil proceedings, distinct from its discretion in criminal proceedings, to exclude evidence which though probative in the sense that it is relevant, is unnecessary in the sense that it is not going to provide an answer that will serve a useful purpose in the proceedings, or which it is unfair or oppressive in all the circumstances to introduce. In so holding, Sedley J. referred to *Attorney-General v. Mulholland* [1963] 2 Q.B. 477; to *DPP v. Christie* [1914] 10 C.A.R. 141 at page 159; *Bradford City Metropolitan Council v. K* [1990] Fam. 140; *Berger v. Raymond Sun Ltd* [1984] 1 W.L.R. 625; *D v. NSPCC* [1978] A.C. 171 at page 239; *Mood Music* [1976] Ch. 119 at page 127 and *Jones v. NCB* [1957] 2 Q.B. 55.

In particular the judge cited from *Mulholland* the statement of Lord Denning M.R. with reference to the admissibility of a question:

"Was it relevant and necessary in this sense, that it was a question which ought to be answered to enable a proper investigation to be made?"

He cited also the passage from the judgment of Donovan L.J. (as he then was):

"While the journalist has no privilege entitling him as of right to refuse to disclose the source, so I think the interrogator has no absolute right to require such disclosure. In the first place, the question has to be relevant to be admissible at all: in the second place it ought to be one the answer to which will serve a useful purpose in relation to the proceedings in hand—I prefer that expression to the term 'necessary'. Both these matters are for the consideration and, if need be, the decision of the judge. And over and above these two requirements, there may be other considerations, impossible to define in advance arising out of the infinite variety of fact and circumstance which a court encounters, which may lead a judge to conclude that more harm than good would result from compelling a disclosure or punishing a refusal to answer."

(ii) Counsel for the defendant was entitled to pursue the question of the plaintiff's infidelity in cross-examination of the wife without any infraction of the Code of Conduct of the Bar. The judge cited parts of the passage from the judgment of Denning in *Jones v. NCB* which begins at page 63 and continues to page 68. In particular he cited these words:

"It is only by cross-examination that a witness's evidence can be properly tested, and it loses much of its effectiveness in counsel's hands if the witness is given time to think out the answer to awkward questions; the very gist of cross-examination lies in the unbroken sequence of question and answer. Further than this, cross-examining counsel is at a grave disadvantage if he is prevented from following a preconceived line of enquiry which is, in his view, most likely to elicit admissions from the witness or qualifications of the evidence which he has given in chief."

He did not overlook the force of that powerful reasoning but it was, he said, logically subsequent to the decision as what the admissible ambit of evidence is in a case. Normally the judgment of experienced counsel is determinative but when the judge has acquired some grasp of the issues and of the evidential basis on which each is to be canvassed it was right that more judicial control should enter into the process.

(iii) The supposed desirability of keeping the plaintiff's evidence about his infidelity away from the wife's knowledge had no factual or legal bearing on the problems. The evidence had been given in open court and it was likely that she would come to know of it. He was not convinced that he should do anything to keep the information from her whether in her own or in the children's interest. Neither was likely to be injured in the present matrimonial situation.

(iv) His principal concern was the risk of this enormously complex case ramifying further into a topic through which, on what was then known to him, there was little likelihood that he should be helped to the conclusion which he must reach on the issue. There was a likelihood of deep distress and embarrassment in a public forum to the wife and, more importantly, a likelihood that "what Mr O'Brien elicits would simply bring the judge back to the central conundrum without helping to resolve it, namely did the

accident cause a change in the plaintiff's personality and did that change cause the break up of his marriage."

(v) The lack of usefulness in permitting the cross-examination was expressed as follows by the judge:

> "To inject into this enquiry the question: did the plaintiff's infidelity cause or contribute to the break up of the marriage? inexorably invites a further question; if so, did the accident cause or contribute to the plaintiff's infidelity? Seen from the present evidential position these questions represent a hall of mirrors in which no fixed end point is any longer discernible."

Therefore, although legally relevant and admissible in principle, the line of inquiry, in the present state of the evidence, was not evidence which would serve a useful purpose in relation to the proceedings in hand. It would complicate the issues without contributing to their resolution and cause avoidable distress and embarrassment to the wife.

*The appeal*

The contention for the defendant on appeal was that the judge was wrong in law to prevent cross-examination of the wife on an issue which was clearly relevant and, if he had a discretion to exclude it, his decision was manifestly wrong. It was not sought to disturb the judge's order with reference to recalling the plaintiff for further cross-examination if this Court should reverse the judge's ruling on cross-examination of the wife. If the order refusing cross-examination of the wife is upheld, then it was submitted that the refusal to permit further cross-examination of the plaintiff was manifestly wrong.

For the defendant, it was asserted by a notice under Ord. 59, r. 6(1)(b) that the judge ought to have held that cross-examination of the wife about the plaintiff's infidelity was irrelevant or not sufficiently relevant to be admissible in law. The affair had not continued beyond 1986 or 1987; the marriage broke down in September 1992; the plaintiff had said that his wife had not known of the affair; and no reliance had been placed upon infidelity in the divorce proceedings. Further, the judge should have placed more reliance upon avoiding prejudice to the interests of the wife and the children.

*Conclusion*

I have much in mind that Sedley J. has been trying this case for seven weeks and knows well what the issues are and the present state of the evidence. I agree in substance with his statement of the applicable principles of law and I acknowledge with respectful gratitude the care taken and the clarity achieved in his examination of the authorities. I have reminded myself of the admonition set out in the speech of Lord Templeman in *Ashmore v. Corporation of Lloyd's* [1992] 1 W.L.R. 446 at page 453 to the effect that the appellate court should be reluctant to entertain complaints about a judge who controls the conduct of proceedings and limits the time and scope of evidence and argument. "So too", he continued, "when a judge for reasons which are not plainly wrong makes an interlocutory decision or makes a decision in the course of a trial, the decision should be respected by the parties and if not respected should be upheld by the appellate court unless the judge was plainly wrong."

Having so reminded myself, I have without hesitation reached the

conclusion that this appeal should be allowed. The decision was, in my judgment, plain wrong.

The plaintiff is asserting that his marriage broke down because of the psychological injury which he suffered, and further that, if it had not broken down for that reason, it would have long continued. The defendant questions those assertions. The wife will support them, having discovered that in 1983 and until 1986 or 1987 the plaintiff was having an affair with another woman, the defendant wishes to ask the wife whether she knew, and if so, what she knew. It was at this time hat the plaintiff and his wife had their child who was born in October 1983 and the twins born in June 1985. It seems to me obviously relevant to ask the wife whether this fact of the infidelity may explain any of the troubles then experienced between them, including the impairment of the sexual relationship. It is also relevant, in my judgment, to enquire whether, if the plaintiff chose to behave in that way then, there is any reason to suppose, so far as she knows, that he might not have done the same thing if there had been no accident. The suggestion for the plaintiff that the subject could be regarded as irrelevant is, in my judgement, unsustainable.

The questions in cross-examination, if asked, may reveal little if anything further in aid of the defendant's case. That is no reason to accede to a pre-emptive application on behalf of the plaintiff to exclude the questioning in order to permit the wife to give evidence in ignorance of the infidelity. If the plaintiff's application to exclude the cross-examination had been rejected, the plaintiff's advisers, as this Court has been told, would have informed the wife of the fact of the infidelity before calling her to give evidence. Mr Blunt submitted that that could and would be done without suggesting any answer to the wife to any questions that might be asked and with complete propriety. With that, I agree. The defendant, however, unless there is sufficient reason to deny him the right, is entitled to test the evidence of the wife, in her recall of what was going on over those years, and in her recollection of what the conduct of the plaintiff was, and what she knows of what may have caused it, by asking her what she knew of the affair and whether, if she did not know before, the fact alters her perception of what was going on. The answers may, as I have said, reveal little. No one, however, can say that they may not reveal material of real importance in the judge's assessment of the wife's evidence and of the plaintiff's evidence.

What reason is there to deny the defendant that right? At the first stage of his ruling, the judge referred to the fact, as he saw it, that to permit the questioning would "demand a fresh range of enquiry and a new depth of fact finding for which the court was unprepared and unequipped" because it would raise the question whether the infidelity had been caused by the accident. It has been said for the defendant, and not disputed, that there is no evidence at all that the infidelity was caused by the accident either from the plaintiff or from anyone else. On such an issue, no doubt, the judge is likely to place more reliance upon inference than upon direct evidence. If the question is allowed to be raised, I see no reason why the inquiry should be regarded as one for which the Court is unprepared or unequipped. The psychiatric evidence has not yet been given. The onus of proof would rest upon the plaintiff. He has known at all times about the affair. If the answer to the point is that the accident caused the affair it will be for him to prove it

The judge was, in my judgment, wrong about the "hall of mirrors" point. The plaintiff's case is that his mental state caused by the accident caused the breakup of his marriage. The defendant wishes to investigate to what extent

the infidelity caused or contributed to the breakup. The fact that that may invite the question whether the accident caused the infidelity does not mean that the judge is presented necessarily with a hall of mirrors in which no fixed end point is discernible. there may be no credible evidence that the condition caused by the accident, which is said to have caused the plaintiff to behave in a way which the wife found intolerable, caused the plaintiff to start and continue an affair with another woman. Nothing suggests to me, either in what we have been told of the evidence in the case, or in what can be regarded as self-evident, that a condition which caused the one must in probability be the cause of the other.

Further, the issues in the case are not limited to whether the accident caused the breakup of the marriage, and, if the infidelity contributed to the breakup of the marriage, whether the accident caused the infidelity. Also relevant to a substantial claim to future loss is an assessment of how long the marriage would in probability have lasted if the accident had not occurred. If the infidelity is now shown to have been caused by the accident, the fact that the plaintiff conducted an adulterous affair between 1983 and 1986 or 1987 must be relevant to that assessment. Further, the wife's answers to questions about her knowledge of and attitude to the infidelity must be relevant to that assessment.

The Court is, of course, right to avoid if it properly can "deep distress and embarrassment" to a witness. For my part, I am unable on the material before the Court to attach any effective consideration to that factor in this case. The fact of the infidelity is public knowledge. The wife has obtained a decree nisi of divorce. I agree with the judge that it is not reasonable to suppose that she will remain ignorant of that fact. Such distress and embarrassment as will be caused to her by proper questioning on this issue did not, and does not, in my judgment, provide a reason for denying to the defendant the ordinary right to cross-examine, properly and within the rules, a witness called for the plaintiff upon a relevant issue at the time and in the manner judged best by counsel for the defendant in the defendant's interest.

The intention of the judge to control in advance the extent of cross-examination upon a relevant issue, by permitting a question about the plaintiff's interest in other women, and by requiring that a further application be made for leave to ask further questions, is in such a case as this one which I have not myself encountered before. I am able to suppose that circumstances might arise in which such control would be necessary or justified. In the circumstances of this case, however, I cannot accept that such limitation upon the exercise of the ordinary right to cross-examine was justified, or that the acknowledgement of the right to re-apply can justify the order. There is, as I have said, no doubt that the issue is relevant; and it seems to me to be an ordinary issue in the sense that similar issues not infrequently arise in personal injury cases, or in claims to dependency damage in fatal accident cases.

It seems very likely to me that, if the attempt had not been made to prevent cross-examination on a relevant issue, the questioning would probably not have taken very long or complicated the case to any significant extent. If I am wrong about that, and it would have taken some considerable time, and if the facts revealed would have required consideration by the medical witnesses, then such time would have been required because relevant material had been produced on a relevant issue.

The judge's decision to refuse to allow the plaintiff to be recalled was not

one, in my judgment, with which this Court could properly interfere. In the light of the decision of this Court on the first issue, and of the further course of the evidence at the hearing the judge may be asked to reconsider that refusal and he would, of course, be free to do so. I would allow this appeal.

> *Order:* Appeal allowed. Costs not to be enforced without leave of the Court or the trial judge. Liberty to apply for costs against the Legal Aid Fund.

*Solicitors*—Grossman Hermer Seligman; Osborne Clarke.